Brimberry *vs.* The Savannah, Florida & Western Railway Company.

BRIMBERRY *vs.* THE SAVANNAH,- FLORIDA AND WESTERN RAILWAY COMPANY.*

A party is not guilty of an actionable nuisance unless the injurious consequences complained of are the natural and proximate results of his own acts or failure of duty. If such consequences were caused by the acts of others, so operating as to produce the injury, he would not be liable. Therefore where an action was brought against a railroad company for the continuance of a nuisance by suffering polluted water to flow upon the plaintiff's premises, thus accumulating thereon garbage, filth and decaying matter, which created noxious scents, producing sickness, thereby impairing the value of his property, and on the trial it appeared that there was a natural and gradual slope of the land towards the defendant's right of way, the lowest point of depression being a cypress pond on the land of the plaintiff, and that the increased flow of the water on the land of the plaintiff since the building of the road arose from the digging of certain ditches and the building of certain embankments by others than the defendant, and not on its land and over which it had no control, it would not be liable to the plaintiff because such water flowed across its land upon that of the plaintiff. Nor did the fact that the defendant opened a culvert, whereby the water was carried from one side of its right of way to the other, render it liable, unless by so doing the volume of water which would run into the plaintiff's pond would be thereby increased. It appearing that such was not the fact, but that, by reason of the nature of the ground, the water would have found its way into the pond if the culvert had not been built, a nonsuit was properly awarded.

(a) This case is distinguished from those of *Smith vs. City of Atlanta,* 75 *Ga.* 110, and *Central Railroad vs. English,* 73 *Id.* 366, in each of which the defendants created the nuisance.

June 13, 1887.

Actions. Damages. Nuisance. Water Courses. Before Judge BOWER. Mitchell Superior Court. March Term, 1886.

Reported in the decision.

SPENCE & TWITTY; C. O. DAVIS; D. H. POPE, for plaintiff in error.

*This case was argued at the last term, and the decision reserved.
    v 78-41

CHISHOLM & ERWIN; ISAAC A. BUSH, for defendant.

HALL, Justice.

This action was instituted to recover damages for the continuance of a nuisance by suffering polluted water to flow upon the plaintiff's premises, thus accumulating thereon garbage, filth and decaying matter, which created noxious stenches and produced sickness, and thereby impaired the value of his property. The case made by the plaintiff's testimony was substantially this : In 1870, a railway was constructed by the South Georgia and Florida Railroad Company, running close to the eastern border of the town of Camilla. This company acquired its right of way over the premises in question from Frank Brimberry. Three years thereafter, William H. Brimberry, the plaintiff in this suit, purchased from him the land, the subject-matter of this litigation, which lies on each side of the right of way of the railroad. The South Georgia and Florida Railroad Company operated the railroad only two or three years, when they sold it to the Atlantic and Gulf Railroad Company. In 1879, it passed into the hands of the Savannah, Florida and Western Railway Company, the defendant in this action. From time whereof the memory of man runneth not to the contrary, there had been, and still is, on the premises of the plaintiff, a cypress pond, covering from fifteen to twenty acres of land. The railroad runs through the eastern portion of this pond. From the depot at Camilla to the pond, and on both sides of the right of way of the road, there is a natural and gradual slope of the land towards that right of way. In short, the road from the depot southward is constructed in a natural depression, of which the lowest point is the cypress pond. The flow of water into the pond has been increased, since the construction of the railroad was commenced, by the following causes, viz : (1) by ditches leading from old ponds and lowlands on the east side of

the railroad and emptying into the ditch belonging to the road; (2) by the embankment of the Newton, Camilla and Cuthbert Railroad, which lies to the west of the Savannah, Florida and Western Railroad, and within the boundaries of the town of Camilla; (3) by a ditch leading from the Lamar lot, which lies to the south of the Camilla, Newton and Cuthbert Railroad, and is also within the limits of the town; and (4) by ditches leading along the public streets of Camilla to and terminating at the railroad right of way.

From the testimony, there can be no doubt that all the water which now flows into the cypress pond, and which did not get there before the building of the railroad, comes from one or all of these four sources; and of course, with this increased flow of water, there would come trash and such filth and other offensive matter as might be expected to pass through ditches constructed by the town for drainage. These facts appearing from the evidence offered by the plaintiff in support of this action, which was commenced on the 23rd of November, 1885, a motion was made, on the close of the testimony, for a nonsuit, which was awarded; and thereupon the plaintiff excepted to the judgment; and this makes the question we are to determine.

Whether the nonsuit was proper will depend on the liability of the defendant company for the increased flow of water, with its hurtful concomitants, on the plaintiff's premises, and the injurious consequences resulting therefrom; and this, in turn, will depend in some measure on the defendant's contribution to this increased flow, or whether it opened the ditches on its own land, or had such care of and control over them as would have enabled it, or rendered it its duty, to arrest or check the increased flow. That it did not open the ditches lying on the east side of the railroad and emptying into the railway ditch, is rendered certain by the testimony in the case, from which it clearly appears that these ditches were dug and kept open from the ponds and low places they were in-

tended to drain, to a point a short distance south of the depot, where they emptied into the railroad ditch running by its side and parallel to the track, by others than this company—probably by the South Georgia and Florida or the Atlantic and Gulf Railroad Company. It further appears that these ditches are not on lands of the company, and that they have no right to make use of them or take any care or control of them. What is true of the drains and ditches on the east side of the railroad, is also true of the flow of water caused by the embankment of the Camilla, Newton and Cuthbert Railroad, as also the drains, ditches and sewers on the west side of the track. All of these last mentioned ditches and drains were opened by the town authorities. None of them were located on the lands of the defendant or subject to its use and control.

If this increase of water in the plaintiff's pond, with its accumulations of noxious matter and polluted water, was caused by ditches or embankments on the land of others, over which the defendant had no control, it would not be liable for the consequences; because this foul water flowed from a higher point on the lands of others across its land. The owner of the estate from which the noxious substances came, or the polluted water flowed, would in that case be liable. Gould on Waters, §278; Brown vs. McAllister, 39 Cal. 573; Merrill vs. Hurley, 120 Mass. 199; Baring vs. Commonwealth, 2 Duval (Ky.) Rep. 95.

In *Smith vs. City of Atlanta*, 75 *Ga.* 110, the liability of the city to account in damages to the plaintiff for a nuisance created and continued on his lot, was put expressly on the ground that the city had created and continued the nuisance, and that it had power, and consequently it was its duty, to abate or remove it. So also in the *Central Railroad vs. English*, 73 *Id.* 366, the responsibility of the railroad company to the plaintiff for damages resulting from a nuisance created by a pond, was placed on the power and duty of the company, which was a lessee of the road and had control over it, to remove or abate the nuisance.

The defendant certainly had a right to open the culvert south of its depot, and carry the water running down the ditches constructed by the town from the west to the east side of the right of way, unless by so doing the volume of water which would run into the plaintiff's pond would be thereby increased. This effect, however, according to the testimony, did not follow, since the water now flowing through the culvert would otherwise have washed over the track, and thus have found its way to the pond; or else it would have run into the ditch on the west side of the road, and in that way have increased the flow accumulated in the pond. Before the culvert was put in, whenever it rained the track was covered with water which flowed from the higher ground on which the town is located.

In the case of the State *vs.* Rankin, 3 South Carolina Rep. 438, s. c. 16 Am. Rep. 737, it was held that a party was not guilty of a public nuisance unless the injurious consequences complained of were the natural and proximate result of his own acts. If such consequences were caused by the acts of others so operating on his acts as to produce the injurious consequences, then he would not be liable. According to our code (§3072), if the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderating largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrongdoer. See also *Brown vs. Atlanta*, 66 *Ga.* 72, h. n. 4 and 6. Hence it is incumbent on the plaintiff, if he would maintain this action, to show that the injury complained of was caused by some act or omission of the defendant, or that the conduct of the defendant was the preponderating cause thereof. This we do not think has been done. The pond on the plaintiff's premises seems to have been the natural outlet of the water which accumulated thereon, both before and after the building of the railroad, and if more water, filth, etc. runs into the pond since the building of the railroad than did before, and which is not trace-

able to causes over which the defendant had control, the plaintiff cannot recover.   See Peck *vs.* Herrington, 109 Ill. 611 (s. c. 50 Am. Rep. 637), and Waffle *vs.* N. Y. Central R. R. Co., 53 N. Y. 11 (s. c. 13 Am. Rep. 467).   In the first of these cases, it was held that " the owner of the upper field in such a case has a natural easement, as it is called, to have the water that falls upon his own land flow off the same upon the field below, which is charged with a corresponding servitude in the nature of dominant and servient tenements."   In the other case (Waffle *vs.* N. Y. Central R. R. Co.), it was held that where the defendant dug ditches in its own land to drain the surface water therefrom into a stream which was its natural outlet, thereby sometimes increasing and at other times decreasing the quantity of water in the stream, to the injury of plaintiff, who was an inferior heritor, the plaintiff had no cause of action.

The facts being established which show that the plaintiff had no cause of action, there was nothing for the jury to pass upon, and a nonsuit was therefore properly awarded.

Judgment affirmed.