THOMOSON *v.* SAMMON.

No. 8744. April 16, 1932.

*Hope D. Stark,* for plaintiff in error.
*Marvin A. Allen, John I. Kelley,* and *I. L. Oakes,* contra.

HINES, J. F. Q. Sammon filed his petition for injunction, in which he makes this case: Petitioner owns a residence on South Clayton Street in the City of Lawrenceville, where he has lived for some 19 years. This street is one of the main thoroughfares of said city. His home is about 60 yards west of the public square in said city, being on the east side of said street. Just south of his home, on the same side of the street and adjoining his lot, is the First Baptist Church, which has been located at this point for a long number of years. North of his property and adjoining the same is a brick building that was erected years ago, and used as a store building for a long number of years. This building is about 35 by 110 feet, and is within 15 feet of his residence. This building has been used for the past few years as a warehouse and garage. Just north of this building and on the same side of the street is the City Drug Company, and a doctor's office, which opens on said street. This office is not over 50 feet from said building just north of his residence. In front of his home and on the west side of said street is his funeral home, which has been maintained at this place for a number of years. It is a two-story brick building, and is the only funeral home in said city where bodies of deceased persons are carried and prepared for burial, and where funeral services are held. North of this home and about 8 feet from it on the same side of the street is located the News-Herald building, the same being a rock building which is now owned by petitioner, and just north of that building on the same side of the street is located a

brick store building where Keown & Huff are now doing business. The defendant owns and operates a livery-stable about 100 feet from and on the west side of said street. Defendant has a good new barn on said property, with ample facilities. Recently, when the News-Herald building was for sale, petitioner and defendant were both trying to buy it, and petitioner succeeded in purchasing it, and defendant became "sore" about it. Defendant has purchased the building just north of and within 15 feet of petitioner's home, and is now preparing to convert said building into a sale stable where he purposes to keep mules and other animals for sale; and if he is permitted to turn said property into a stable, such use will result in the accumulation of manure and filth, the creation of offensive odors, and the breeding of flies, gnats, and other poisonous insects, which will be dangerous to the health of petitioner and his family, and will practically destroy the value of his home as a residence. It will also greatly injure and damage his funeral home and business connected therewith. It will also be a great nuisance to all the members of said church in going to and from church. He has at least $10,000 invested in the buildings comprising his home, funeral home, and the News-Herald building, and about $20,000 invested in his business and equipment. The turning of said property into a livery and sale stable, and the creation of the noisome, nauseating, and sickening odors which will come from said stable, will inevitably result in the loss of petitioner's business. The building which defendant proposes to convert into such stable was never built and has never been used for that purpose. Defendant is actuated by a desire to injure and damage petitioner, and not from any worthy motive or for personal gain, as he already has good stables and ample quarters where he is now located. Petitioner is without remedy at law, and his damages are and will be irreparable. No sale stable of this character has been permitted in said city on the main street for a long number of years; and petitioner is informed that defendant has not obtained any permit from the city to operate a sale stable at this place, and to have one on this street would be offensive not only to petitioner but to other citizens. Petitioner prays that the defendant be enjoined from using said building as a livery and sale stable, and converting the same into such use; and for other relief.

Defendant demurred upon the ground that the petition set forth

no cause of action and was without equity, and set forth no facts which would cause a court of equity to interfere with his lawful conduct in maintaining a lawful business. The court did not pass upon this demurrer. The defendant's answer admitted the allegations of the petition as to the location of the properties therein referred to. He denied the other allegations, and specially denied that no stable of this character had been permitted on the main street of the city for a number of years, and that he had not obtained any permit to operate such a stable at this place, and that such a stable would be offensive to petitioner and other citizens of the city. Further answering, he made these allegations: On August 25, 1931, he obtained a deed to said property. The south wall of said building is the line between his and plaintiff's property. On the north side of said building an alley runs east and west. On this alley has been located, for more than twenty-five years, a horse and mule trading alley. On this alley there are now five mule and horse barns which are used as sales stables. On the rear line of plaintiff's lot is a mule barn now operated by J. B. Oakes, which runs all the way across the rear line of plaintiff's lot. There are two open windows in this mule barn that face on the back yard of plaintiff's home. In this barn Oakes keeps hogs, goats, cows, horses, and mules, all the year round. There is no opening in the south wall of defendant's building next to plaintiff's home, and no opening in the east wall of said building. The defendant has no intention of cutting windows in the south or east wall of said building. It is his intention to cut open an old door in the north wall, facing the alley and 52 feet from the front of said building on South Clayton Street. He was in the act of building a partition wall in his building when he was enjoined by plaintiff. The partition wall is to be 21 feet from the front of said building, and is to be of fireproof material, and to have no openings, making the building into two separate rooms or stores. Defendant has rented the front of said building for a feed store and for the sale of gasoline and oil. The tenant was moving in his stock of goods when the injunction was served. The brick and concrete building of defendant was built before plaintiff's home was built next door. There were mule barns within 60 feet of plaintiff's home when same was built. This part of said city has always been business property. The purpose of defendant in buying said building was

that he could have a mule barn on the mule-trading alley of said city, the building already owned by defendant being too far from the mule-trading part of town. Plaintiff maintains and operates an undertaking establishment next to defendant's business, where bodies are brought, kept, and embalmed; and this sort of business damages defendant's business, but he knows that it is a legal business. There is no malice on the part of the defendant; it is a business proposition with him. He needs the building for his business during the fall and winter and in the spring to keep his mules. He will have to repossess several mules this winter, and will keep them in rear of said building until he can dispose of them next spring. He never maintains a sales stable during the summer months. He will not be driving mules in and out of the alley on Sunday, and people going to and from church can in no way be disturbed from said mule barn. The mule barns in said alley are beneficial to the business in that part of town, as they bring more people to said part of town to trade. He always keeps a clean mule barn, and always keeps shavings for his stock to stand on. The floor in said building is a concrete one, and with the shavings there will be no noise from stamping. He has never maintained a stable that was damp or smelled bad. He has never allowed drinking or disorder around his barns. In the back yard of plaintiff is a barn where plaintiff keeps a cow. This barn is within a few feet of plaintiff's back door. One cow will cause more smells and flies than 10 mules. Cow-barns cause more sickness than any other kind of stock barns. There is no ordinance in said city requiring any person to have a permit to make repairs on the inside of a building, and there is no city ordinance against operating sales stables.

On the hearing the plaintiff introduced his verified petition, and his affidavit in which he made substantially the same statements as in the allegations of his petition. He introduced a joint affidavit of five persons, deposing that in the event the building now in possession of defendant is converted into a mule barn, there will naturally be an accumulation of filth and manure in said stable, which will breed flies and gnats, and permeate the air in the vicinity of said stable generally and near the home of petitioner, and will greatly impair its value for residence purposes, and tend to impair the health of petitioner's family.

Defendant introduced, beside his verified answer, his affidavit

substantially as shown by the allegations therein. Also, an affidavit by Dr. W. P. Ezzard, a practicing physician, the material portion of which is as follows: "I can not call to mind any case of sickness caused by any mule-barn in my experience as a physician." Also, affidavit by M. V. Frazier, deposing that he operates a store on Crogan Street in said city, that the rear of his store building faces on an alley, and on said alley there are several mule-barns and the building of defendant in controversy, and that the mule-barns are beneficial to his business, as they bring people to that part of town. Also, affidavit by M. R. Hale, deposing that he owns a store on Crogan Street in said city, that he has operated this business for a number of years, that on the alley back of his store are several mule-barns where horses and mules are kept for sale, that the building of the defendant faces on South Clayton Street, but the north side of said building faces on the mule-barn alley, that the mule-barns on this alley are beneficial to his business as they draw large crowds of people to this part of town, and that there are no bad odors in the alley from the mule-barns, and said mule-barns have never hurt the value of the building in which his business is located. Also, affidavits of six other affiants, deposing that they are familiar with the property of petitioner and the building of defendant, that in the event defendant converts the rear of his building into a mule-barn it will in no way affect the value of petitioner's property, and that the alley on the north side of said building in controversy has been a mule-trading alley for more than 10 years, and there are several mule-barns on this alley now.

The judge granted an interlocutory injunction as prayed, and the defendant excepted.

From the foregoing statement of facts it will appear that the residence of the plaintiff and the building of the defendant both front on South Clayton Street; that the buildings are located 15 feet apart; that the defendant is altering his building by converting the front into a store and filling-station and the rear into a sales stable, which will open on a mule-trading alley running along the north side of his lot; that the store and sales stable will be separated by a fireproof wall, which will be located 21 feet from the front of the building; that the door of his mule sales stable, fronting on said alley, will be 52 feet from the front of the building on the

above street; that there are no openings in the defendant's building next to plaintiff's home, and there are no openings on the east wall of said building; that defendant has no intention of cutting windows in the south and east wall of said building; that on the rear line of plaintiff's lot there is a mule-barn now operated by J. B. Oakes, which runs all the way across the rear line of plaintiff's lot; that there are two open windows in this mule-barn which face on the back yard of plaintiff's home; and that in this barn Oakes keeps hogs, goats, cows, horses, and mules all the year around. In these circumstances we do not think that the alteration being made by the defendant in his building and the occupation of the room therein opening on the mule-trading alley will constitute a nuisance per se.

A livery-stable is not a nuisance per se. A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. *Standard Oil Co.* v. *Kahn,* 165 *Ga.* 575, 576 (141 S. E. 643). Mere apprehension that the operation of a building as a livery-stable will amount to a nuisance, when conducted in an improper manner, will not authorize the grant of an injunction. *Barton* v. *Rogers,* 166 *Ga.* 802 (144 S. E. 248). A court of equity will exercise the power to restrain nuisances in the course of erection only in cases of necessity, where the evil sought to be remedied is not merely probable, but certain; and it will be the least inclined to interfere with the apprehended mischief to follow from establishments, such as livery-stables, as have a tendency to promote the public convenience. In *Harrison* v. *Brooks,* 20 *Ga.* 537, Judge Lumpkin, who delivered the opinion of the court, said "that injunctions will only be granted in cases of absolute necessity, in which the evil sought to be prevented was not only probable, but certain and inevitable." That ruling was followed in *Bacon* v. *Walker,* 77 *Ga.* 336, 338, in which this court held that nothing that is lawful in its erection can be a nuisance per se. Mere apprehension of irreparable injury from an alleged nuisance consisting of a house in the course of construction or alteration for a lawful business is not sufficient to authorize an injunction. If it be a nuisance, the consequences must be to a reasonable degree certain. *Richmond Cotton Oil Co.* v. *Castellaw,* 134 *Ga.* 472 (67 S. E. 1126). Mere allegations of speculative or contingent injuries, with nothing to show that they will in fact happen, do not require an injunction. A livery-stable

758

in a town is not necessarily a nuisance in itself; and therefore a court of equity has no jurisdiction to restrain by injunction either the completion of a building because intended for that purpose, or its appropriation to the use intended. "No instance can be produced of the interposition of courts of equity by injunction in the case of an eventual or contingent nuisance." *Rounsaville* v. *Kohlheim,* 68 *Ga.* 668 (45 Am. R. 505).

Under the circumstances of this case, it does not appear that the use of the rear of the building of the defendant for a mule sales stable would constitute a nuisance per se. If it is so operated as to produce a nuisance, then the plaintiff can apply to a court of equity to enjoin the operation of this sales stable in such a manner as to constitute a nuisance. A sales stable has long been in operation in the rear of plaintiff's residence. This stable has two windows at its end, facing the plaintiff's residence. This stable is not alleged to have proved a nuisance to the plaintiff. The sales stable which the defendant purposes to operate does not face the plaintiff's residence. No windows in his sales stable will open towards the residence of the plaintiff. It is not alleged that the stable is to be constructed in such a manner as to be in and of itself a nuisance. Plaintiff alleges that if the defendant is permitted to turn his building into a stable, such use will result in the accumulation of manure and filth, the creation of offensive odors, and the breeding of flies, gnats, and other poisonous insects, which will be dangerous to the health of himself and family. These evil consequences are conjectural and speculative. The defendant denies that his stable will be so used as to bring about these results. In the circumstances we do not think that the plaintiff makes such a case of nuisance as will authorize a court of equity to enjoin the contemplated alteration in the building and its appropriation for a sales stable. If the defendant so uses this stable as to permit the accumulation of manure and filth, the creation of offensive odors, and breeding of flies, gnats, and other poisonous insects which may be dangerous to the health of the plaintiff and his family, then the plaintiff would be authorized to apply to a court of equity for an injunction restraining such operation of the stable by the defendant. It is not certain that if it is so operated the plaintiff, due to the situation of this stable to his residence, would suffer the evils and injuries which he anticipates.

The case at bar differs from those which the plaintiff asserts authorized the judge to grant an injunction. In *Coker* v. *Birge,* 9 *Ga.* 425 (54 Am. D. 347), Birge was about to erect a livery-stable, with a plank floor, fronting upon a public street, and within 65 feet of a public hotel owned and kept by Coker, which fronted on the same street. This court held that the erection of the stable at the place stated would operate as a nuisance to the property of complainant, and that he was entitled to an injunction to restrain its erection. In the case at bar the livery-stable of the defendant does not face upon a public street, but faces upon a mule-trading alley where horses and mules are exhibited and kept for the purpose of being shown and sold to people in need of such stock. In *Coker* v. *Birge,* 10 *Ga.* 336 (the same case) this court held that the trial court should not discharge an ad iterim interdict so far as to permit the experiment to be made, whether the livery-stable could be erected and conducted in such a manner as not to be a nuisance. The facts in the case when it appeared the second time in this court were the same as when it made its first appearance. Similar facts appeared in *Bush* v. *Sheffield,* 169 *Ga.* 850 (151 S. E. 811). The cases of *Coker* v. *Birge* were reviewed by this court in *Rounsaville* v. *Kohlheim,* supra; and this court made this ruling: "This brings the rule where we think the law puts it, that livery-stables may be so located as to become nuisances, and so may any private stable be so located with reference to dwellings or buildings of others, and be so improperly kept and conducted as to become an actionable nuisance. But the mere probability that it will become so is insufficient to deprive the owner of a lot of the right to erect a stable for his own use, although it may be on the line of his lot and quite near the dwelling of an adjacent owner." This court in such review then adopted the rule stated above in the first citation of the *Rounsaville* v. *Kohlheim* case. It follows that the trial judge erred in granting the interlocutory injunction.

*Judgment reversed. All the Justices concur.*