34820. CITY OF MACON *v.* CANNON.

DECIDED JANUARY 14, 1954.

*Ed. S. Sell, Jr., Benning M. Grice,* for plaintiff in error.
*Martin, Snow & Grant,* contra.

SUTTON, C. J. ■ In special ground 1 of the motion for new trial, the City of Macon complains that the court erred in admitting evidence of an increase in the flow of water due to the

paving of Emery Highway, over the objection that it appeared from the evidence that Emery Highway was not constructed and paved, or its surface water drainage planned or installed, by the City of Macon; that, on the contrary, it appeared from the evidence that this was done by the State of Georgia and was financed by the United States Government, pursuant to a resolution previously adopted by the Mayor and Council of the City of Macon; that consequently the City of Macon was not liable for any damage by water from Emery Highway as a joint tortfeasor in directing or participating, either as principal or agent, in a nuisance; and that the pertinent parts of the resolution were as follows: "Georgia, Bibb County. Whereas, the State Highway Department and the County of Bibb desire to construct a road between Macon and Camp Wheeler known as Federal Aid Project No. SN-FAP 2479-A(1); And, whereas, the project will extend within the corporate limits of the municipality, town, or city of Macon. It is resolved, that we, the Mayor and Members of the Council (or other officer or officers) charged with the management of the finance of said Municipality of Macon, and the legally authorized agents of said town or municipality hereby guarantee to the State Highway Department of Georgia and the County of Bibb any and all rights-of-way that may, in the opinion of the State Highway Department of Georgia, be necessary to the proper construction of the above named project, and according to survey as made by engineers of the State Highway Department, within the corporate limits of the said municipality, the same being between survey stations [as designated] and a width of varied feet as shown on sheet two."

In the resolution, the city further agreed: to defend any suits and to save harmless the State Highway Department and the County of Bibb from any claims for damages arising after completion of the project, whether arising as a result of construction on said right-of-way, or drainage, change of grade, change of location, or any cause whatever; not to erect any traffic signals on the right-of-way without consent of the State Highway Department; to move or have moved all service connections or mains that impede the installation of proper storm drainage; and to protect the State Highway Department and county from any claim or damage that might be occasioned through the fulfilment of the foregoing condition.

In special ground 2, error is assigned on the admission in evidence of a certified copy of the resolution set out above, over the same objection.

In both grounds, the movant contends that this evidence was prejudicial because a controlling issue of fact in the case was whether the City of Macon had, by constructing Emery Highway and Center Street and by constructing sewers from these streets to the sewer which ran under the plaintiff's house, increased the flow of water through the portion of the sewer on the plaintiff's property beyond its capacity and had thereby damaged her property.

As ruled in *Cannon* v. *City of Macon*, 81 *Ga. App.* 310 (58 S. E. 2d 563), this action is brought upon the theory that the city was maintaining a nuisance. The evidence showed that the city maintained Emery Highway as a city street after its construction, and that the alleged nuisance resulted from the inadequacy of the ditch or storm sewer to carry the increased flow of waters running into it. It was therefore immaterial that the city itself had not paved the street, for it was the city's duty to provide for drainage of the increased run-off of surface water from increased impervious areas within its limits, whether such areas were made directly by the municipality, or under the circumstances and in the manner here shown. *City of Macon* v. *Roy*, 34 *Ga. App.* 603, 604 (130 S. E. 700); *City of Macon* v. *Macon Paper Co.*, 35 *Ga. App.* 120 (132 S. E. 136); *City of Macon* v. *Douglas*, 45 *Ga. App.* 798 (165 S. E. 922); *Phinizy* v. *City Council of Augusta*, 47 *Ga.* 260, 268; *Mayor &c. of Albany* v. *Sikes*, 94 *Ga.* 30 (20 S. E. 257, 26 L. R. A. 653, 47 Am. St. R. 132); *Langley* v. *City Council of Augusta*, 118 *Ga.* 590 (8) (45 S. E. 486, 98 Am. St. R. 133). The paving of Emery Highway was only one of the changed conditions which resulted in the inadequacy of the drainage system running across the plaintiff's property, according to the evidence; and it was not error to admit evidence of increased flow of water in the ditch, occurring after Emery Highway was paved and to admit the resolution of the City Council of Macon, guaranteeing the rights-of-way for the highway to the State Highway Department.

■ In special ground 3 of the motion for new trial, error is assigned on the following part of the charge to the jury: "The power to construct and maintain a system of drainage does not

carry with it the right to maintain it in such a way as to endanger the. health of the inhabitants or injure their property"; and in special ground 4 complaint is made of another part of the charge, as follows: "The grading and drainage must be done so that the same will not prove a nuisance to the citizens, impairing the health of the families and producing noxious scents thereby rendering the enjoyment of their property impossible. If it be so done, the city will be liable for damages." It is contended that there was no evidence of the sewer's impairing or endangering health, or of its producing noxious scents, such as would authorize the charges set out above.

The plaintiff testified: "There's water stands in that thing all the time up under my house, practically all the time. . . As to whether or not water stands in the sewer or in the caves, as I call it, that is washed out in the ground, it does stand under the house there practically all the time, in two or three places. As to whether or not I have noticed any mosquitoes around that area, oh, yes, we have plenty of mosquitoes when that water stands under that house and in that ditch." Mrs. Mittie Smith, who lived next to the plaintiff, testified: "I have seen things wash down that sewer and lodge in the ditch there behind my house. Well, most anything. There's been dogs, dead dogs and dead cats and tin cans. There certainly are mosquitoes around in that ditch. There are plenty of them." Mrs. Fannie White, who lived below the plaintiff and Mrs. Mittie Smith, testified: "In that ditch behind the house there are plenty of mosquitoes back there, and Mrs. Smith has a high wall there in the bottom of the ditch, cemented ditch, and where the water leaves the ditch at the corner of her lot and my lot joins them the water is so swift and it digs a hole down in there and that is where usually the water stands at all the time." Joell C. Beall, a sanitary engineer with the City-County Health Department, testified that he had made an inspection of the premises in 1948 and found mosquitoes breeding, but not disease-carrying mosquitoes, and that he did not recall seeing any dead animals. While this witness also testified that he did not find any condition which would endanger the life or health of anyone, with respect to the ditch, his opinion was not binding on the jury; and, from the testimony of those residing along the ditch that water stagnated in the ditch, that mosquitoes bred there, and that dead animals

and tin cans lodged in it, we think that the jury was authorized to draw an inference that such conditions produced offensive odors and were dangerous to the health of persons living nearby. This was sufficient circumstantial evidence to support the charges complained of in special grounds 3 and 4.

■ In special ground 5, the movant contends that the court erred in charging the jury "that if you find that, prior to the paving of Emery Highway and Center Street, or either of them, the sewer underneath the plaintiff's house was of sufficient capacity to carry the water coming therein as a result of an ordinary rainfall, and if you should find that, as a result of the paving of Emery Highway and Center Street and the installation of sewers running from such streets to said ditch, the amount of water flowing underneath plaintiff's property as a result of an ordinary rainfall is greater than the capacity of the sewer underneath the plaintiff's home, and if you should find that, as a result of said increase in water in said sewer, the same overflows onto plaintiff's property, and if you should find that the defendant had knowledge of this condition, the maintenance of such condition thereafter would constitute a nuisance, and the defendant City of Macon would be liable for the resulting damage therefrom to the property of the plaintiff."

It is contended that this charge is an incorrect statement of law, as the facts assumed in the charge do not constitute a nuisance, inasmuch as whether the city maintained a nuisance depends upon whether the city negligently maintained the sewer or whether the sewer injuriously affected the health of the plaintiff. It is further contended that there was no evidence that, as a result of the paving and installation of the sewers referred to, the amount of water flowing underneath the plaintiff's property as a result of an ordinary rainfall was greater than the capacity of the sewer under the plaintiff's house; that there was no evidence that the sewer overflowed the plaintiff's property as the result of the increased water in it; and that the evidence of increased flow from Emery Highway should not have been submitted, for the reasons set out in the first special ground, as dealt with in the first division of this opinion.

The authorized maintenance by a municipality of a drainage system for the purpose of draining surface water is a governmental function (*City Council of Augusta* v. *Williams*, 206 *Ga.*

558, 57 S. E. 2d 593); and, in an action based only upon negligence, the municipality is not liable for damage caused by the negligent maintenance of its system of sewerage and drainage. *City Council of Augusta* v. *Williams*, 81 *Ga. App.* 132 (58 S. E. 2d 208); *Foster* v. *Mayor &c. of Savannah*, 77 *Ga. App.* 346 (48 S. E. 2d 686). But it was further stated in the *Foster* case (at p. 349): "Where a municipality in the exercise of its functions, both governmental and ministerial, creates a nuisance which is specially injurious to an individual, such individual may have a cause of acton for damages, and negligence is not an essential ingredient of the action. *City of Macon* v. *Roy*, 34 *Ga. App.* 603, 605 (130 S. E. 700). Also see *City of Macon* v. *Macon Paper Company*, 35 *Ga. App.* 120 (132 S. E. 136); *Langley* v. *Augusta*, 118 *Ga.* 590, 598 (45 S. E. 486, 98 Am. St. R. 133); *Kea* v. *Dublin*, 145 *Ga.* 511 (89 S. E. 484)." Code § 72-101, provides: "A nuisance is anything that works hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man." "To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable." *Coker* v. *Birge*, 9 *Ga.* 425, 428 (54 Am. D. 347); *Benton* v. *Pittard*, 197 *Ga.* 843, 844 (31 S. E. 2d 6, 153 A. L. R. 968).

An interference with the natural flow of surface water may also amount to a nuisance, without the presence of the element of danger to health. In the case of *Mayor &c. of Albany v. Sikes*, 94 *Ga.* 30 (20 S. E. 257, 26 L. R. A. 653, 47 Am. St. R. 132), the opinion of Chief Justice Warner in *Phinizy* v. *City Council of Augusta*, 47 *Ga.* 260, was approved and restated as follows: "Indeed, most of the authorities follow the doctrine that, even as to surface water, one landed proprietor has no right to concentrate and collect it, and thus cause it to be discharged upon the land of a lower proprietor in greater quantities at a particular locality, or in a manner different from that in which the water would be received by the lower estate if it simply ran down upon it from the upper by the law of gravitation." And in

the *Phinizy* case, 47 *Ga.* 260, 266, it was stated: "If, by the introduction of an increased quantity of water into the city by means of the canal, when added to the natural fall of water thereon, the drains and sewers constructed by the defendants to carry off such water cause a greater quantity of water to be thrown onto the plaintiff's land than would otherwise be there, it is a nuisance, for which he may maintain his action for damages." *Bass Canning Co.* v. *MacDougald Const. Co.,* 174 *Ga.* 222 (162 S. E. 687), was a case where the court held that the first count of the petition set out a cause of action based on a nuisance resulting from the closing of a storm-sewer opening by the City of Milledgeville, causing surface water to run into the plaintiff's storage room and damage the goods stored in it. There was no allegation of injury to health in that case.

From these authorities, we conclude that the charge as given was not error for the reason assigned, and that the facts upon which the charge was based would constitute a nuisance. The cases of *Southland Coffee Co.* v. *City of Macon,* 60 *Ga. App.* 253 (3 S. E. 2d 739), and *Lawrence* v. *City of LaGrange,* 63 *Ga. App.* 587 (11 S. E. 2d 696), cited and relied upon by the plaintiff in error, are not in point and are distinguishable from the present case. In *Southland Coffee Co.* v. *Macon,* it appeared that the drainage system was inadequate only in that it failed to remove the run-off from one extraordinary rainfall, and such inadequacy could not have been the result of negligence, nor did it result in a continuing, abatable nuisance. In *Lawrence* v. *City of La-Grange,* supra, the cause of action was for permanent damage to the plaintiff's property by reason of a completed trespass, and the suit was not brought within four years from the accrual of the right of action.

The defendant's contention that there was no evidence to support this charge is without merit. The plaintiff testified that a covered portion of the sewer was under her house when she bought it in 1947, just after the paving of Center Street and the connection of its drains to the sewer, and about three years after the paving of Emery Highway; that at this time the sewer under her house was in pretty fair condition, causing no trouble; that, since that time, a large piece of the concrete cover fell into the lower end of the sewer under her property and also large holes have been washed out of the bottom and sides of the sewer, caus-

ing the pillars of her house to sink with attendant damage to the house; that, since she moved into the house, when there would be an ordinary or regular heavy rain, not a storm, there would be a lot of water in the sewer, which sometimes overflowed; that on one such occasion the water was knee deep in her yard and was coming over from Mrs. Beck's yard like a waterfall besides from the ditch running over; that the sewer was open above Mrs. Beck's house and overflowed there, too; that it was coming from the sewer because there was so much water that the sewer opening (at Mrs. Beck's) could not take care of the water coming down through the ditch from the other sewers, and the water just came down over the top of it; that any water which might do her any damage has come from the streets above her since they were paved and the water running from them into the ditch; that, even when there is a light rain, the water whips around in the holes washed in the sewer under her property; that an ordinary rain fills it up; that the water stands in the sewer under her house practically all the time; that, when the sewer is about half full, the water goes out of the holes washed in the side of the sewer and into the ground, undermining her house; that the sewer has overflowed about five or six times since she has been in the house; that any normal rain will fill the ditch and cause a tremendous flow of water to come down into it.

Mrs. Mittie Smith, who lived in the house next to the plaintiff's and downstream on the ditch, testified that she had lived there for 15 to 20 years; that more water came into the ditch since Emery Highway was paved; that it was washing out more than it did before; and that, since the paving of Center Street (running from Emery Highway to Clinton Street, nearly parallel to the upper part of the ditch), it did not seem that there was as much water coming down Clinton Street in front of her house.

Mrs. M. N. Beck, who lived next to and above Mrs. Cannon, the plaintiff, testified that she was living there before Emery Highway was paved; that, since the paving of Emery Highway and Center Street, she had noticed more water was in the ditch than before, because it overflowed at the opening of the closed sewer across her lot and ran through her yard and under her house; and that it had not been doing that before the paving was done but did so thereafter.

Mrs. H. M. Arrington testified that she lived with Mrs. Mittie Smith, and that the sewer, in recent years, overflowed at the plaintiff's house and the water ran down under their house.

W. J. Glisson testified: that he lived where the ditch crossed Hydrolia Street, above the plaintiff's property, and had been there since 1936; that three or four feet more of water came down the ditch in an average rain after the paving of Emery Highway and Center Street, and after other sewers were added to the ditch; that, since that time, the water had begun to wash away the bank of his yard, but had not done so before Emery Highway was built and never got so high as to come over a little wall in the bottom of the ditch; that, after a hard rain, three times more water came down the ditch, while the water was never more than a foot deep before the other sewers were turned into the ditch; that the ditch got four feet deep or overflowed four or five times in some summers and one or two times in other summers; and that the ditch was pretty bad in the fall when it rained constantly, and then the whole time in winter.

Mrs. Fannie White, who lived two houses below the plaintiff and beside the ditch testified that about two or three times as much water flowed in the ditch after the paving of Emery Highway as before and that no more water flowed into the ditch from other people's property than it did nine years previously.

J. H. Wooten testified that twice as much water went through the ditch after Emery Highway was paved as before, and that it flooded above the closed part of the sewer running under his house on Lee Street, which was above the plaintiff's house.

William E. Joiner, who had lived at the corner of Center and Garden Streets for about 15 years, testified that Center Street was down-grade all the way from Emery Highway to Clinton Street; that, before Center Street was paved, there were no catch basins or storm sewers to divert the water from the street, and on occasions of heavy rain there would be a good bit of water running down the street; that Center Street begins at a low point on Emery Highway, and water collecting on the highway would run down Center Street; that, if there were no storm sewers or catch basins to divert water from Center Street which had come from above, the water would go on down to Clinton Street; that sand and dirt formerly washed down from Center Street onto Clinton Street; and that the only water on Center Street now is that running from one catch basin to the other.

Mrs. Mattie L. Meadows testified: that she had lived since 1944 on the north side of Garden Street, where the sewer crosses beneath it; that a storm sewer leading from Center Street under Garden Street was connected to the sewer in question in 1947; that, after that was done, the water began to come across her lot and go through her yard, from the point where the open ditch went into the closed sewer across her lot; and that the water had not overflowed before the sewer from Center Street was put in.

The evidence that both Emery Highway and Center Street were unpaved and not drained before 1944 and 1947, and that after these streets were paved and then drained into the sewer running under the plaintiff's house, the flow of water coming through this ditch or sewer was greatly increased and overflowed at the plaintiff's property and at several other points, tended to show that the flow was greater than the capacity of the drainage system as a result of the paving and draining of Center Street and Emery Highway. No other explanation was advanced for the increased flow of water. Also, such overflowing did not occur only once, but there was evidence that the conditions of overflowing and washing occurred frequently, and hence were not the result of extraordinary rains, as contended by the defendant. William H. Miller, a meteorologist for the U. S. Weather Bureau at Cochran Field, near Macon, testified that there were at least ten days of what he referred to as excessive rainfall (more than .25 inches of rain in a five-minute period) during 1951, a dry year, and that such excessive rainfall on occasions is to be expected and is normal. The evidence above set out authorized the charge complained of, which was not an erroneous statement of law as contended in special ground 5.

■ Error is assigned in special ground 6 upon a charge which, it is contended, caused the jury to believe that the City of Macon would be responsible for increased water flowing from Emery Highway, which it did not pave and drain, but which was constructed and drained by the State Highway Department, pursuant to a resolution of the city council. As indicated in the first division of this opinion, the city would be liable for maintaining a storm sewer or drainage system, which, through changed conditions, became inadequate to remove an increased rate of run-off of surface water and so resulted in a nuisance to an adjoining property owner. The charge complained of was not erroneous.

■ In special ground 7 it is contended that the court erred in refusing to give the following timely written request to charge: "I charge you that in order for the plaintiff to recover under count one, it is essential that she prove that there was danger to life or health of herself or any other person lawfully occupying her premises." The matter in issue to which the request was said to be adjusted was whether the facts brought out by the evidence constituted a nuisance under count one, and it is contended that the failure to give such request was prejudicial because the plaintiff in count one did not allege negligence on the part of the city, and it was therefore incumbent upon her to prove danger to life or health, as alleged in count one.

But the court charged the jury to determine from the evidence whether or not the City of Macon had placed an additional burden over and above the normal burden that was to be reasonably expected on the sewer or drainage ditch across the plaintiff's property to such an extent that the sewer was proximately damaged thereby, or overflowed and conditions resulted proximately therefrom which would constitute a nuisance. If the jury did not so find, they were instructed to return a verdict on count one for the defendant. The court had previously charged that the power to construct and maintain a system of drainage does not carry with it the right to maintain it in such a way as to endanger the health of the inhabitants, and that the drainage must be done so that it would not prove a nuisance to the citizens, impairing the health of families and producing noxious scents and thereby rendering the enjoyment of their property impossible. The request was substantially covered by the general charge, and the court did not err in refusing to give the charge as requested.

■ In special ground 8, error is assigned upon the court's refusal to give a request to charge that the plaintiff could not recover if the jury found that her damage was the result of increased water from the paving of Emery Highway alone. It is doubtful whether such a finding would have been authorized under the evidence, but the request is not a correct statement of the law applicable to the facts of this case, for the reasons stated in the first division of this opinion.

■ The plaintiff's evidence has been set out at length in the

498

consideration of the special grounds of the city's motion for new trial. The city's contentions in support of the general grounds of its motion are: (1) that there was no evidence of an amount of water exceeding the capacity of the sewer or ditch under Mrs. Cannon's house during any normal rain; (2) that there was no evidence that the sewer was adequate to carry natural rainwater from the adjacent area without damage to adjoining property before the paving of Emery Highway and Center Street; (3) that the evidence failed to show that water from the paved streets rather than other water caused the plaintiff's damage; and (4) that the evidence failed to show a nuisance. From such of the evidence as has been herein set out, it will be seen that these contentions are without merit. The evidence authorized the verdict, and the court did not err in denying the motion for new trial.

*Judgment affirmed. Felton and Quillian, JJ., concur.*