A99A0337. FIELDER et al. v. RICE CONSTRUCTION COMPANY, INC. et al.
(522 SE2d 13)

ELDRIDGE, Judge.

In December 1991, Napoleon and Belinda Fielder, plaintiffs-appellants ("Fielder"), moved into a home located at 119 Knotts Landing, Macon, Bibb County. On January 10, 1992, Fielder closed on the purchase of 119 Knotts Landing from the defendants, developer-builder Ronnie W. Rice, individually and d/b/a Ronnie Rice Construction Company, and his corporation, Rice Construction Company, Inc.

Fielder owned the lot and septic system. Sometime in 1992, ground water began to cause problems with the septic field percolation. From the time of purchase until Fielder was evicted from the property, the soil composition would not allow sufficient percolation for the septic tank and the percolation field to properly percolate. This caused raw sewage to constantly seep to the surface area around the property.

Fielder contacted Rice and Rice Construction Company, Inc. about the problem of percolation. Rice tried to solve the problem by installing a French drain to improve the ground water situation. The French drain interfered with the proper operation of the septic system because it drew in both ground water and sewage percolating in the soil, which resulted in the discharge of sewage from the French drain outlet.

In February 1993, Fielder contacted the Macon-Bibb County Health Department, defendant-appellee ("Health Department"), and the Health Department oversaw and participated in several unsuccessful attempts to fix the septic system, including digging an open ditch to allow for ground water runoff. A wet spot was discovered at the end of the bleeder lines, which created problems at the distribution box and inside the house. The Health Department recommended that a pit be installed at the end of the bleeder lines, and Rice installed it. Subsequently, Rice made further alterations to the septic system without the knowledge, approval, or permit from the Health Department. After the expiration of the Builder's Warranties, the Health Department began to issue Fielder citations for violating the health code.

As a consequence of Fielder's failure to take any action to remedy the system despite repeated directives to do so, the Health Department took action against Fielder. Finally, just before Christmas, the Health Department caused Fielder to be evicted from the premises.

The Health Department had as one of its functions the inspection and testing of soil and terrain in an area of new development to determine the suitability of such land for septic fields both as to percolation in the soil, as well as ground water that would prevent percolation. The genesis of Fielder's septic problems was the failure of the Health Department to properly carry out this function.

On or about August 22, 1986, Robert A. Liek, a registered land surveyor, examined various lots in the South Fork subdivision. After such examination, Jim Taylor, a supervisor for the Health Department, gave an unsatisfactory grade to the lots tested, which included 119 Knotts Landing. Taylor instructed Rice, the developer, to improve the percolation to a satisfactory level through necessary but costly measures, in time and money, in order to receive Health Department approval.

Rice strongly disagreed with Taylor and filed a complaint against him with the Health Department, causing his removal from Rice's developments, including South Fork. Then the Health Department assigned a new engineer to re-test the soil percolation, and he provided an acceptable test sample. This allowed the Health Department to approve Rice's plans for septic use and allowed Rice to build

119 Knotts Landing with a septic tank system without having to install the costly improvements.

On April 17, 1998, as a consequence of the problems, Fielder sued the defendants in a renewal action. The Health Department was sued for negligence and nuisance in creating, continuing, and maintaining such nuisance conditions. The Health Department answered and moved for summary judgment. After conducting a hearing, the trial court entered summary judgment for the Health Department, and Fielder appealed.

1. Fielder contends that the trial court erred in granting summary judgment to the Health Department on his nuisance claim. We agree.

Where a county causes, creates, or maintains a nuisance which amounts to an inverse condemnation, the county is liable in damages that would be recoverable in an action for inverse condemnation. *DeKalb County v. Orwig*, 261 Ga. 137, 138 (1) (402 SE2d 513) (1991); *Fulton County v. Wheaton*, 252 Ga. 49, 50 (1) (310 SE2d 910) (1984), overruled on other grounds, *DeKalb County v. Orwig*, supra; *City of Columbus v. Myszka*, 246 Ga. 571, 572 (1) (272 SE2d 302) (1980), overruled on other grounds, *DeKalb County v. Orwig*, supra; *Duffield v. DeKalb County*, 242 Ga. 432, 433 (1) (249 SE2d 235) (1978). The reason sovereign immunity is not applicable when a nuisance amounts to a taking of property of one of its citizens for public purposes is that inverse condemnation is a form of eminent domain. Ga. Const. of 1983, Art. I, Sec. III, Par. I; *Miree v. United States*, 242 Ga. 126, 134 (2) (249 SE2d 573) (1978); *Woodside v. Fulton County*, 223 Ga. 316, 319-321 (1) (155 SE2d 404) (1967).

> However, liability of a [county] cannot arise *solely* from its approval of construction projects which increase surface water runoff. Rather, it is the county's *failure* to maintain properly the [property], resulting in a nuisance, which creates its liability. Cf. *City of Columbus v. Myszka*, [supra at 572].

(Emphasis in original.) *Fulton County v. Wheaton*, supra at 50 (1); see also *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996).

In this case, the Health Department not only approved the lot for septic tank use but set aside requirements of its own office that would have prevented the problem. Thus, prior to the approval the Health Department knew of the probable potential problem but yielded to pressure to allow substandard septic tank conditions to be approved nonetheless. Then, when Fielder put the Health Department on actual notice that the approved septic field was failing, the

Health Department failed and refused to require Rice to take the appropriate steps necessary to abate the nuisance, but instead, ordered and permitted inadequate corrective measures that maintained the unabated nuisance. The Health Department exercised its control by removing Fielder from the premises when Rice could no longer be compelled under the warranty to correct the nuisance. Such facts raise a jury question whether such acts and omissions constituted maintaining a nuisance by the Health Department.

The Health Department contends that its conduct, while negligent, does not come within the meaning of a nuisance, because it does not own or control the Fielder property. While ownership of property generally may give rise to a nuisance when property is used to cause harm to others, such ownership is not an essential element of the cause of action for nuisance.

> The common law and the Restatement of Torts restrict the action for private nuisance to invasions of interest in the use and enjoyment of land, including interest in the use and enjoyment of easements and profits, but where there is an invasion of these interests the plaintiff may recover . . . for harm arising from acts which affect the land itself.

*Cox v. DeJarnette*, 104 Ga. App. 664, 675 (2) (123 SE2d 16) (1961). When a governmental entity causes, continues, or maintains a nuisance, property that can be harmed by a nuisance "means the rights of the owner in relation to land or a thing; the right of a person to possess, use, enjoy and dispose of it, and the corresponding right to exclude others from the use. [Cit.]" (Punctuation and emphasis omitted.) *Duffield v. DeKalb County*, supra at 433-434. " 'There is general agreement that [nuisance] is incapable of any exact or comprehensive definition.' [Cit.]" *Cox v. DeJarnette*, supra at 674 (2). "A nuisance is anything that causes hurt, inconvenience, or damage to another." OCGA § 41-1-1; *State of Ga. v. Ball Investment Co.*, 191 Ga. 382, 389 (2) (12 SE2d 574) (1940).

> Occasionally, the defendant may act from a malicious desire to so harm for its own sake, but more often the situation involving a private nuisance is one where the invasion is intentional merely in the sense that the defendant has created or continued the interference with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow. . . . If the interference is unreasonable, it is tortious and subjects him to liability. . . . Private property cannot be physically harmed or its value impaired in this way, however socially desirable the con-

duct, without payment being made for the harm done, if the interference that is the consequence of the activity is substantial and considered to be unreasonable.

Prosser & Keeton on the Law of Torts (5th ed.), § 87, pp. 624-625; see also *McLendon & Cox v. Roberts*, 197 Ga. App. 478 (398 SE2d 579) (1990); *City of Macon v. Cannon*, 89 Ga. App. 484, 492 (3) (79 SE2d 816) (1954). Ownership of land by the tortfeasor is not an element, but control is; the essential element of nuisance is control over the cause of the harm. See *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 424 (2) (249 SE2d 224) (1978); *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 838 (165 SE2d 141) (1968); *Thomoson v. Sammon*, 174 Ga. 751, 757 (164 SE 45) (1932); *Brimberry v. Savannah, Fla. &c. R. Co.*, 78 Ga. 641, 644-646 (3 SE 274) (1887). The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance. *C & S Trust Co. v. Phillips Petroleum Co.*, 192 Ga. App. 499, 500 (3) (385 SE2d 426) (1989); see also *Brimberry v. Savannah, Fla. &c. R. Co.*, supra at 644-645.

> "A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." [Cits.] "By far the larger class of nuisances is that which may be termed nuisances in fact or nuisances per accidens, and consists of those acts, occupations, or structures which are not nuisances per se but may become nuisances by reason of the circumstances or the location and surroundings." [Cit.]

*Simpson v. DuPont Powder Co.*, 143 Ga. 465, 466 (85 SE 344) (1915). The Health Department had control over whether or not the lot was approved for septic tank use and had such control that it could have required significant improvements in the soil and terrain that would have resolved the ground water problem for the septic field prior to approval of a septic system. A nuisance does not arise solely from approval of construction projects which increase surface water runoff. However, such negligent approval is a factor in maintaining such nuisance, because the Health Department chose to act by approving the construction project, which gave rise to a nuisance resulting from the ground water and the failure of the septic field to percolate. The Health Department acted concurrently with Rice in creating the nuisance. See *Hibbs v. City of Riverdale*, supra at 338; *Fulton County v. Wheaton*, supra at 50; *City of Columbus v. Myszka*, supra at 572. Further, the Health Department had the power to compel Rice to abate the nuisance but allowed the nuisance to continue

with inadequate abatement measures and, thus, participated in the maintenance of the nuisance on Fielder's land. *Fulton County v. Wheaton*, supra at 50; *City of Columbus v. Myszka*, supra at 572. Thus, creation, power, and control over the cause of the nuisance that interfered with Fielder's right to use, enjoy, and dispose of the property without abatement cause the Health Department to be potentially liable. See *Duffield v. DeKalb County*, supra at 433-434; see also *Hammond v. City of Warner Robins*, 224 Ga. App. 684 (482 SE2d 422) (1997); *City of Warner Robins v. Holt*, 220 Ga. App. 794 (470 SE2d 238) (1996). Thus, the Health Department is subject to an action for nuisance, and a jury question exists, so that the trial court erred in granting summary judgment.

2. Fielder contends that the trial court erred in granting the Health Department summary judgment on his negligence theory. We do not agree.

The Health Department was created by local constitutional amendment. Ga. L. 1953, Nov.-Dec. Sess., p. 256; Ga. L. 1986, p. 4682. The Health Department monitors health issues not only for Bibb County, but also as an agent for the State Department of Human Resources. OCGA §§ 31-3-4 (a) (3), (4), (6), (7); 31-3-5; 31-3-15. As such, it acts as a state agency. See generally *James v. Richmond County Health Dept.*, 168 Ga. App. 416 (309 SE2d 411) (1983). Therefore, Art. I, Sec. II, Par. IX of the 1983 Georgia Constitution as amended gives the Health Department sovereign immunity when it acts as agent for the Department of Human Resources as a state agency by delegation of powers and duties or by contract. The apparent intent of the 1991 constitutional amendment and the Tort Claims Act was to redraw and redefine the terms of the state's waiver of sovereign immunity. OCGA § 50-21-22 (5), (6); *Miller v. Ga. Ports Auth.*, 266 Ga. 586, 587-588 (470 SE2d 426) (1996); *Curtis v. Bd. of Regents*, 262 Ga. 226, 227-228 (416 SE2d 510) (1992); *Miree v. United States*, supra at 134; *Jackson v. Ga. Lottery Corp.*, 228 Ga. App. 239, 240-241 (1) (491 SE2d 408) (1997).

> "It is the general rule that a county, when exercising governmental functions and acting as an agency of the state, is not liable, in the absence of statute imposing liability, for its failure to perform a duty or for its negligent performance of the duty, not even when the duty is imposed by statute; and there is no distinction in the application of this rule between the neglect to perform an act which ought to have been performed, and the performance of the duty in a negligent manner." [Cit.]

*Miree v. United States*, supra at 134 (1) (a); accord *James v. Rich-*

mond County Health Dept., supra at 416.

However, when the Health Department acts solely as a county agency, then it is governed by the same sovereign immunity as the county, and a waiver by specific legislative act is necessary in order for it to be subject to a suit in tort. OCGA § 50-21-22 (5); *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995); *Gilbert v. Richardson*, 264 Ga. 744, 746 (1) (452 SE2d 476) (1994). There was no statutory waiver of sovereign immunity as to the Health Department, so that it is not subject to suit in tort except for inverse condemnation for nuisance. Therefore, summary judgment as to negligence was proper. See OCGA § 50-21-22 (5); *Duffield v. DeKalb County*, supra at 433.

3. Fielder asserts that summary judgment was erroneously granted to the Health Department where its officials acted in bad faith or with malice. We do not agree.

Division 2 determined that sovereign immunity applied to the Health Department. Sovereign immunity, unless waived by statute, applies also to county officials and employees acting in their official capacity. *Woodard v. Laurens County*, supra at 405; *Gilbert v. Richardson*, supra at 746, n. 4. Depending on whether there has been a specific legislative waiver of sovereign immunity as to the county, officials and employees under the facts and circumstances of the case may have official immunity or may be liable for negligent performance of ministerial functions and malicious or bad faith performance of discretionary acts. See *Merrow v. Hawkins*, 266 Ga. 390 (467 SE2d 336) (1996); *Gilbert v. Richardson*, supra at 750-753; *Nelson v. Spalding County*, 249 Ga. 334 (290 SE2d 915) (1982). However, such analysis is academic, because, in this case, no individual officials or employees of the Health Department were named parties to this action. See *Gilbert v. Richardson*, supra; *Nelson v. Spalding County*, supra at 336. Therefore, this enumeration of error lacks merit.

*Judgment reversed. Pope, P. J., and Barnes, J., concur. Blackburn, P. J., concurs specially. Johnson, C. J., Smith and Ellington, JJ., dissent.*

BLACKBURN, Presiding Judge, concurring specially.

While I agree with the outcome set forth in the majority's opinion, I write separately to point out several elements of its analysis with which I cannot agree.

The majority concludes that: "Thus, prior to the approval the Health Department knew of the probable potential problem, but yielded to pressure to allow substandard septic tank conditions to be approved nonetheless." Whether the septic tank conditions were substandard, however, remains a question of fact for a jury's considera-

tion. The record does not authorize the majority's conclusion.

The majority focuses sole blame for the continuation of the nuisance on the Health Department. It ignores the knowledge which Fielder had of the condition and his failure to correct and eliminate the septic tank problems. Assuming that Fielder was, in fact, barred from proceeding against Rice, a question which is not presently before us, he was still fully aware of the warranty period during which he could compel Rice to correct the septic tank problems on his property. He was on notice that the time in which to fix the problem was limited. Fielder was subject to Health Department regulations and was not entitled to wait for others to bring his property into compliance with such regulations. He had the option of correcting the problem and seeking legal redress thereafter.

This case shares a number of similarities with *Gantt v. Bennett*, 231 Ga. App. 238, 242-245 (499 SE2d 75) (1998). In *Gantt*, this Court affirmed a jury's finding of fraud against the Forsyth County Health Department based on an inspector's approval of a septic tank system without complying with county regulations and without completing an on-site inspection of the system before it was covered with dirt. Here, the facts, if a jury so finds, are even more egregious, as the Health Department had completed an initial inspection which belied the use of the subject septic system which was installed after a subsequent inspection. This raises a jury question as to the appropriateness of the system itself, and of the conduct of the Health Department in its inspection and regulation of the septic system installed on Fielder's property. If the county's nonfeasance in *Gantt* supported an action against a county health department, the possible misfeasance in this case should as well. The existence of a fact issue in this case precludes the grant of summary judgment to the Health Department on Fielder's nuisance claim.

SMITH, Judge, dissenting.

I concur in Divisions 2 and 3 of the majority opinion. I must respectfully dissent from Division 1, because I do not agree that the Health Department created or maintained a nuisance. The Health Department may have been negligent in permitting Rice to build on unsuitable property, but in my view, its actions are more similar to the governmental act of approving a construction project that increases surface water. In *Fulton County v. Wheaton*, 252 Ga. 49, 50 (1) (310 SE2d 910) (1984), the Supreme Court held that the sole act of approving a construction project that leads to increased surface water runoff cannot impose liability for creating or maintaining a nuisance. It is true that when the governmental body *itself* negligently constructs or undertakes to maintain a sewer or drainage system that causes repeated flooding, a continuing, abatable nuisance is

established for which the governmental body may be liable. *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996).

Here, however, the Health Department did not own the drainage system. "In general, . . . the owner of the property from which the nuisance emanates is the proper defendant in an action for damages flowing from the creation or maintenance of a nuisance. See generally OCGA § 41-1-5." *McLendon & Cox v. Roberts*, 197 Ga. App. 478 (398 SE2d 579) (1990). Moreover, the Health Department did not construct the septic tank or the house, did not have a duty to maintain it, and did not undertake to maintain it. It did offer advice and assistance, but as the majority acknowledges, Rice made alterations to the system without the knowledge, assistance, or approval of the Health Department. If, in fact, a nuisance was created, Fielder must look to Rice for redress.

I am authorized to state that Chief Judge Johnson and Judge Ellington join in this dissent.

DECIDED JULY 15, 1999 —
RECONSIDERATION DENIED JULY 29, 1999

*Fricks, Dell & Lee, Robert A. Fricks, James E. Lee II*, for appellants.

*Sell & Melton, Jeffrey B. Hanson*, for appellees.