A92A1639. WALTHER v. MULTICRAFT CONSTRUCTION
COMPANY et al.
(423 SE2d 725)

Cooper, Judge.

Appellees entered into a contract with appellant whereby appellees were to perform certain construction services. Following a series of disputes stemming from appellant's failure to make payments to appellees pursuant to the contract, appellees filed a 12-count complaint against appellant for breach of contract, seeking damages as well as attorney fees and expenses of litigation. In his answer, appellant contended that the payments were withheld because the work performed by appellees was unsatisfactory. The case was tried before a jury, and at the conclusion of the evidence, the trial court directed a verdict in favor of appellees in the amount of $90,529.94 plus interest in the amount of $13,861.09 and submitted appellees claim for attorney fees to the jury. The jury returned a verdict awarding appellees attorney fees in the amount of $52,195.52. Appellant's motions for new trial and judgment notwithstanding the verdict were denied, and this appeal followed.

1. Appellant argues that the trial court erred in directing a verdict in favor of appellees because there was no evidence supporting appellees' claims. "A directed verdict is proper when 'there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. . . .' OCGA § 9-11-50 (a). 'On appeal from an order directing a verdict, the question before this court is whether the evidence was without conflict as it pertains to the material issues in the case and, thus, when viewed in a light most favorable to the losing party, demanded the verdict ordered.' [Cit.]" *Lester v. Bird,* 200 Ga. App. 335, 337 (1) (408 SE2d 147) (1991). We have reviewed the record and find that appellees' uncontroverted evidence supported each of their claims against appellant for nonpayment by showing that the work requested by appellant was performed by appellees in a work-

manlike manner and that appellant had not paid for the work.[1] Appellant submitted no evidence showing that either the claims had been paid or the work had not been performed. There being no conflict in the evidence, the trial court did not err in directing a verdict in favor of appellees.

2. We next address appellant's contention that the issue of attorney fees should not have been submitted to the jury because there was no evidence that appellant acted in bad faith, was stubbornly litigious or caused appellees unnecessary trouble and expense. Appellant argues that he had a bona fide dispute about the quality of the work performed by appellees; therefore, appellees were not entitled to recover attorney fees. "A plaintiff may recover for bad faith concerning the transactions and dealings out of which the cause of action arose. OCGA § 13-6-11; [cits.]. A bona fide controversy within the contemplation of the code section pertains solely to the issue of stubborn litigiousness or causing the plaintiff unnecessary trouble and expense. Despite the existence of a bona fide controversy as to liability, a jury may find that defendant 'acted in the most atrocious bad faith in his dealing with the plaintiff.' [Cits.]" *Fidelity Nat. Bank v. Kneller*, 194 Ga. App. 55, 63 (3) (390 SE2d 55) (1989). Appellees presented evidence that they performed the work requested by appellant in a workmanlike manner; that appellant refused to pay the invoices submitted in connection with the work performed; and that although appellant expressed dissatisfaction with the work of appellees, appellant gave no specific reasons for his dissatisfaction but steadfastly maintained that he would not pay for the work. We conclude that there was some evidence from which the jury could find that appellant acted in bad faith in his refusal to pay the contracted amounts.

3. In four enumerations of error, appellant contends that the trial court erred in denying his motions for new trial and j.n.o.v. on the issue of attorney fees because there was no evidence as to either the value or the reasonableness of the professional services rendered by appellees' attorney. The following colloquy constitutes the evidence presented on the issue of attorney fees:

"[Appellees' attorney]: We are on a one-third contingency, which means, ladies and gentlemen, if a recovery is made in this case whatever it is then we are entitled to one-third. If there is no recovery in the case, we're entitled to nothing.

"I want to explain to you that that is the usual and customary

---

[1] Appellant's contention in subpart (a) of this enumeration that the trial court erred in directing a verdict on Count 3 of appellees' complaint in the amount of $68,146.69 instead of $66,146.69 is without merit. The invoice submitted with respect to this Count reflected an additional $2,000 owed by appellant to cover punch out charges, therefore bringing the total owed by appellant to $68,146.69.

manner of handling matters in our profession.

"As [appellant's attorney] said, he usually charges 40 percent, but we on a contingency case try to grade the matter from 33 and a third to 50 to determine the possibility of collecting. And in this case we set it at one-third. So that's the basis of our fee.

"Our fee is based on one-third the amount recovered. If we don't recover, we're not entitled to a nickel. And if we do recover, when we collect the money, not on judgment, we are entitled to one-third of that which we have in hand. That's it.

"[Appellant's attorney]: Do you have a written contract?

"[Appellees' attorney]: I do not.

"[Appellant's attorney]: You say that it varies from one-third to 50; Correct?

"[Appellees' attorney]: In the industry, yes.

"[Appellant's attorney]: But how about in your office?

"[Appellees' attorney]: Absolutely.

"[Appellant's attorney]: When do you get 50 percent?

"[Appellees' attorney]: . . . [I]f there is a malicious prosecution case, something of that kind where the liability is small, where the possibility of a recovery is not good, we then charge 50 percent contingency fee. Slip and fall cases where it's raining and ·snowing and there's ice on the sidewalk and somebody walks in off of ice into the front door of a shop and slips and falls, where we're going to have a hard time proving negligence, if we take this case, we charge them 50 percent."

It is axiomatic that " ' "[a]n attorney cannot recover for professional services without proof of their value." (Cit.)' [Cits.]" *Price v. Mitchell*, 154 Ga. App. 523, 526 (6) (268 SE2d 743) (1980). Furthermore, "[i]t is well established that a party's 'attorney himself is competent to testify as to his opinion on reasonable fees ((Cit.)).' [Cit.]" *Campbell v. Bausch*, 195 Ga. App. 791, 792 (2) (395 SE2d 267) (1990). Appellees' attorney testified that a contingency fee ranging from 33 1/3 to 50 percent was a usual and customary fee for handling cases in the legal profession and that the range varied depending on the type of case. In addition, appellant's attorney testified that he charged 40 percent as a "usual and customary fee." We find that the evidence was sufficient to establish that the contingency fee charged by appellees' attorney was reasonable. *U-Haul Co. of Western Ga. v. Ford*, 171 Ga. App. 744 (5) (320 SE2d 868) (1984); see also *American Motorists Ins. Co. v. King Shrimp Co.*, 199 Ga. App. 847 (3) (406 SE2d 273) (1991).

4. Appellant also alleges that there is no evidence to support the jury's award of attorney fees in the amount of 50 percent of the judgment. " 'The amount of damages found by the jury must be authorized by the evidence.' [Cit.]" *Orkin Exterminating Co. v. Durden*, 189

Ga. App. 479, 482 (1) (376 SE2d 376) (1988). Appellees' attorney testified that his fee in the case was 33 1/3 percent of the damages awarded in the case. He also explained that a contingency fee of 50 percent is reserved for certain categories of cases, such as slip and fall, where liability is difficult to establish and the possibility of a recovery is not good. It is clear from the evidence that appellees' attorney neither charged appellees a fee of 50 percent nor considered the case to be of the type warranting a 50 percent contingency fee. Consequently, we conclude that the award of attorney fees in the amount of 50 percent of the damages was not authorized by the evidence. "However, '(w)here the jury finds damages in an amount which exceeds that which is authorized by the evidence it is not necessary to grant a new trial if the erroneous amount can be accurately measured and deducted from the verdict. [Cit.]' [Cit.]" *Morris v. Bonner*, 183 Ga. App. 499, 502 (3) (359 SE2d 244) (1987). The jury's award is capable of recalculation to reflect the proper amount of attorney fees. Accordingly, the judgment of the trial court is affirmed in part and reversed in part with direction that the trial court determine the attorney fees in the amount of 33 1/3 percent of the judgment.

*Judgment affirmed in part and reversed in part with direction. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 14, 1992.

*Gambrell, Clarke, Anderson & Stolz, Robert D. Feagin, Nancy E. Gordon*, for appellant.
*Rich, Bass, Kidd & Witcher, Casper Rich*, for appellees.