## A94A2598. CITY OF COLLEGE PARK v. PICHON.
### (456 SE2d 686)

RUFFIN, Judge.

Paul Pichon sued the City of College Park ("the City") for damages arising out of the City's failure to maintain a drainage easement it had across Pichon's property. The easement included a drainage ditch that formed a part of the City's overall drainage system and frequently overflowed onto Pichon's property. Pichon's complaint alleged that the City's failure to maintain the ditch resulted in a nuisance causing an unspecified amount of damages. The jury returned a verdict in favor of Pichon, awarding him $10,000 in compensatory damages plus $8,290 in costs of litigation and attorney fees. The City appeals from the verdict and the court's judgment thereon.

1. The City contends that the trial court erred in reversing its peremptory strike of juror number three. After selecting a jury, Pichon, who is black, objected to the City's peremptory strikes of three black panel members pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Although voir dire was not recorded, the record indicates that seven of the twenty-four citizens on the venire were black. The City used three of its six peremptory challenges to strike black veniremen, Pichon struck one black venireman and the resulting jury was comprised of nine white jurors and three black jurors. The City explained it struck two of the black veniremen because they both had open drainage ditches on their property over which the City had an easement. The City further explained that in both cases, the veniremen were able to reach an agreement where the City installed pipes and filled in the ditches. The City concluded that the two veniremen might harbor expectations that Pichon should have received the same treatment as they did from the City. With regard to the other venireman, juror number three, the City explained that his admitted acquaintance with one of Pichon's potential key witnesses would affect his judgment.

The court permitted the first two strikes, but disallowed the strike as to juror number three. The court noted that the City failed to ask juror number three whether or not his acquaintance with the witness would bias him in any way. As a remedy for this improper strike, the court impaneled juror number three on the jury and allowed the City to strike another member. No further objections were made concerning the matter and the proceedings continued.

Despite the City's argument that Pichon failed to make a prima

facie showing of racial discrimination as to juror number three, "the record discloses that [the City] offered to provide a racially-neutral explanation for [its] peremptory challenges even before the trial court determined affirmatively on the record that a prima facie case had been made. Once the party exercising peremptory challenges has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the [complaining party] has made a prima facie showing becomes moot." (Citations and punctuation omitted.) *Ellerbee v. State*, 215 Ga. App. 312, 315 (6) (450 SE2d 443) (1994).

"Therefore, since the issue of whether [Pichon] established a prima facie case is moot, we address the issue of the sufficiency of [the City's] explanations for the exercise of the . . . peremptory [challenge]." *Lewis v. State*, 262 Ga. 679, 680 (2) (424 SE2d 626) (1993). The City was required to explain its striking of juror number three "by articulating a racially-neutral reason related to the particular case. [Cit.]" Id. The City explained that the juror's admitted acquaintance with one of Pichon's potential key witnesses would affect his judgment. The witness referred to, James Patterson, was the prior owner of Pichon's property and was listed as one of his witnesses on the pre-trial order. This was a race-neutral reason, and because the City learned in discovery that the property experienced water damage before Pichon purchased it from Patterson, the reason was related to the case. While the trial court's findings are entitled to great deference, see *Asbury v. Ga. World Congress Center*, 212 Ga. App. 628 (1) (442 SE2d 822) (1994), we find its ruling erroneous under the circumstances of this case.

However, "[a]n appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful. [Cits.]" *Tarleton v. Griffin Fed. Savings Bank*, 202 Ga. App. 454, 455 (2b) (415 SE2d 4) (1992). "[W]e find no harm to [the City] in the court's decision, since the record shows that [Patterson] never testified. That being so, any relationship between the juror and [Patterson] was irrelevant." *Pyburn v. State*, 175 Ga. App. 158, 160 (5) (332 SE2d 899) (1985).

2. The City contends the trial court erred in instructing the jury on actual damages, lost market value and lost rental value when no evidence of these damages was presented. During the charge conference, the City withdrew its request to charge number 16 which provided that "the measure of damages for continuing an abatable nuisance is a diminution of the yearly rental value of the property damaged during the existence of the nuisance plus any actual damages sustained." The court agreed with the City that no evidence had been presented concerning the diminution of rental value and agreed

not to give the charge. However, after the court charged the jury, the City argued that the court had given charge number 16 and excepted. The judge denied he gave the withdrawn charge, but the City continued to argue the charge should not have been given because the court said it was going to withdraw the charge and because there was no evidence of special damages. The record shows that charge number 16 was not given.

The City contends for the first time on appeal that the court erred in giving a completely different charge concerning damages. "It is well established that this court will not review errors raised for the first time on appeal. [Cit.] 'OCGA § 5-5-24 prohibits a party from complaining of the giving or failing to give jury instructions unless it objects before the jury returns its verdict, except where there has been a substantial error in the charge which was harmful as a matter of law.' [Cit.]" *Jones v. Brooks County Bd. of Commrs.*, 202 Ga. App. 515, 517 (2) (414 SE2d 729) (1992). It is clear from the record that the City did not object to the charge now asserted as error. Moreover, contrary to the City's argument, the record reveals that evidence of damages was in fact presented. Pichon testified that the ditch would overflow into his parking lot causing it to crack and that he received an estimate to repair the parking lot in the amount of $4,000. Accordingly, we find no error.

3. The City also contends the trial court erred in charging the jury that "[i]f the City claims a right to use the drainage ditch as produced by evidence in the case, then it is under a duty to maintain it so that the content and flow of the surface waters would not overflow to damage — to the damage of the adjacent property owners." The charge is a substantial repetition of the principle of law set forth by our Supreme Court in *City of Atlanta v. Williams*, 218 Ga. 379 (1) (128 SE2d 41) (1962). Despite the City's attempts to distinguish *Williams*, it is clear that both cases involved "heavy rains which cause[d] overflows. . . ." Id. at 379. Accordingly, since "[t]his charge was a correct statement of the law and was adjusted to the evidence[,]" *Lee v. Bartusek*, 205 Ga. App. 551, 552 (2) (422 SE2d 570) (1992), we find no error.

4. The City asserts as error the evidence presented to support the award of litigation expenses and attorney fees. In support of his claim for these damages, Pichon testified that he "paid a retainer fee and lawyer's fee of 35 percent." When asked the amount of the retainer Pichon responded: "If I remember, it was a thousand. I don't remember exact . . . it was about a thousand something." In proving his other litigation expenses for deposition costs and expert witness fees, Pichon similarly testified that he only knew the approximate costs and admitted that he did not know the actual costs or what the charges were for because he had "never seen a statement" for any of

the charges.

" 'An attorney cannot recover for professional services without proof of their value.' [Cit.] Generally, a party will proffer the opinion testimony of his present counsel as well as that of other attorneys in an effort to show what constitutes a reasonable attorney fee in light of the litigation history of the case. [Cits.] A party's testimony as to the 'approximate' cost of legal fees is insufficient. [Cit.] Inasmuch as [Pichon's] testimony alone did not give the jury sufficient basis upon which to award a reasonable amount for attorney fees, it was error to enter judgment on the jury's award of attorney fees." *First Bank of Clayton County v. Dollar*, 159 Ga. App. 815, 817 (4) (285 SE2d 203) (1981). Since the award of attorney fees is not supported by sufficient evidence, the case is remanded to the trial court with direction that the attorney fees portion of the judgment be stricken. Similarly, " '[s]ince an allowance for [the other litigation expenses] cannot be based on guesswork (cit.), [Pichon] failed to make out a proper case for these damages,' and they must therefore be stricken from the award. [Cit.]" *Wahnschaff Corp. v. O. E. Clark Paper Box Co.*, 166 Ga. App. 242, 244 (2) (304 SE2d 91) (1983).

*Judgment affirmed in part, reversed in part, and remanded with directions. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 17, 1995 —
RECONSIDERATION DISMISSED MARCH 29, 1995.

*Jenkins & Eells, Frank E. Jenkins III, Kirk R. Fjelstul,* for appellant.

*Franklin N. Biggins, Glaze, Glaze & Fincher, Steven M. Fincher,* for appellee.

