A97A1998. GANTT v. BENNETT et al.
A97A1999. PROPES et al. v. BENNETT et al.
A97A2000. BENNETT et al. v. FORSYTH COUNTY
BOARD OF HEALTH.
(499 SE2d 75)

POPE, Presiding Judge.

This case is a combination of three appeals arising from the jury verdict rendered on Earnest and Ann Bennett's claims against several defendants regarding their malfunctioning septic system. The jury returned a verdict in favor of the Bennetts against several of the defendants in the amount of $47,500 actual damages and $10,800 in attorney fees. The jury also imposed attorney fees against the Bennetts with respect to one defendant. For the reasons stated below, in Case Nos. A97A1998 and A97A1999 we affirm the judgments in favor of the Bennetts; and in Case No. A97A2000, we reverse the award of attorney fees against the Bennetts and affirm the remainder of the judgment.

Viewing the evidence in the light most favorable to the verdict, it was that Jake Gantt, who had an extensive background in residential construction and development, was the builder of the Bennetts' house. Jake Gantt also developed the subdivision in which the house is located and built many of the other homes in the subdivision.

On February 11, 1987, the Forsyth County Department of Planning & Development issued the first permit for construction on the Bennetts' house. On that same date, Jake's son Joe obtained an individual sewage disposal system permit for the property. The Forsyth County Health Department issued a form which indicated that the individual sewage disposal system at the house was inspected on April 13, 1987. The Bennetts, who were the first buyers of the home,

bought it on January 27, 1989 for $60,000.

Earnest Bennett went to the property three times before buying the house. During these inspections he had a conversation with Gantt in which he asked about the property and specifically asked about the septic system. At the closing on the house, the Bennetts obtained a certificate from the County Health Department stating that the septic system on the property "was examined and apparently operating properly on 1-25-89."

Several months after they bought the house, the Bennetts noticed something leaking into their yard and smelled a foul odor around the house. They eventually determined that the problem was with the septic system and the Bennetts determined that it could not be repaired.

The instant case arose when the Forsyth County Health Department filed a complaint against the Bennetts seeking an interlocutory injunction to stop them from operating the malfunctioning sewage system on their property.[1] The Bennetts then filed a counterclaim against the Health Department and added as defendants Jake Gantt; Joe Gantt (Jake's son who the Bennetts claimed had installed the septic tank and drain field at the property), and David Bealle, a registered land surveyor whom Jake Gantt hired to do the surveying and percolation test on the lot. The Bennetts later amended their counterclaim, adding claims against Terry Propes, the Forsyth County inspector who issued the permit on their septic system and falsely represented that he had inspected it.[2] In addition to the original fraud claim, the Bennetts also asserted claims under the Georgia RICO Act.

Essentially, the Bennetts claimed that in building their home, Jake and Joe Gantt conspired with others to defraud them by installing the septic system in soils in which the system could not operate. The Bennetts contended that David Bealle conspired with Jake Gantt to falsify information on the preliminary plat for the property by showing successful percolation tests, when in fact such properties could not have passed percolation testing. They claimed that Jake Gantt conspired with Terry Propes to obtain a permit for the septic system without Propes completing the required visual inspection of the system. The Bennetts contended that the defendants were aware that the septic system was installed in ground water; that the

---

[1] The Bennetts originally had filed a complaint based on these matters in 1991, but had dismissed that suit before this one was filed. See Division 11 below.

[2] After the Bennetts consented to the injunctive relief sought by the Forsyth County Board of Health, the parties were realigned to facilitate the trial by designating the Bennetts as plaintiffs and the remaining parties as defendants. This opinion refers to the Bennetts as plaintiffs.

defendants knew that the system would not operate properly; and that their home was uninhabitable due to the malfunctioning septic system.

Before trial, the Bennetts agreed to the permanent injunction which the Board of Health had sought three years earlier. After a lengthy trial, the jury returned a verdict in favor of Earnest and Ann Bennett and against defendants Forsyth County Board of Health, Jake Gantt, and Terry Propes, jointly and severally, the damages outlined above. Nonetheless, the jury found no RICO violations and determined that the Bennetts were not entitled to punitive damages. The jury also returned a verdict in favor of Joe Gantt and David Bealle, finding that they were not liable to plaintiffs. Upon motion by Bealle, the trial court assessed attorney fees pursuant to OCGA § 9-15-14 against the plaintiffs. These appeals followed.

### Case No. A97A1998

In Case No. A97A1998, Jake Gantt raises five enumerations of error. As stated above, for the following reasons, we affirm.

1. Gantt contends the trial court erred in denying his motions for directed verdict and for a new trial on the Bennetts' fraud claim. Gantt argues that there was no evidence that he made any misrepresentations of material fact to the Bennetts, nor that he concealed any material fact from them.

We disagree and affirm the trial court's denial of the motions. "Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict, new trial and j.n.o.v. will not be disturbed." (Punctuation omitted.) *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 162 (1) (473 SE2d 256) (1996).

"The tort of fraud has five elements: (1) a false representation by defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from action; (4) justifiable reliance by the plaintiff; and (5) damages. [Cit.]" *Wiederhold v. Smith*, 203 Ga. App. 877, 878 (1) (418 SE2d 141) (1992). OCGA § 23-2-57 provides: "[f]raud may not be presumed but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence."

Moreover, "in cases of passive concealment by the seller of defective realty, we find there to be an exception to the rule of caveat

emptor. That exception places upon the seller a duty to disclose in situations where he or she has special knowledge not apparent to the buyer and is aware that the buyer is acting under a misapprehension as to facts which would be important to the buyer and would probably affect its decision. *Wilhite v. Mays*, 140 Ga. App. 816, 818 (232 SE2d 141) (1976); *Hall v. Richardson Homes*, 168 Ga. App. 593, 595 (309 SE2d 825) (1983)." (Punctuation omitted.) *Cohen v. Stuhler*, 180 Ga. App. 543, 544 (349 SE2d 541) (1986).

"It is well-established that questions of fraud, the truth and materiality of representations made by a defendant, and whether the plaintiff could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury." (Citations and punctuation omitted.) *Wiederhold v. Smith*, 203 Ga. App. at 878. In this case, there was evidence that Jake Gantt concealed that the septic system was defective, in a manner so as to deceive and mislead. There was evidence that Jake Gantt was aware that the system had been installed in ground water and in improper soils which would cause it to fail. Gantt admitted that he was present at the site throughout the construction, including when the workers dug the septic system. One of the construction workers testified that the house was built in a low area and that because of this, Jake Gantt had to bring fill dirt to the lot for a couple of days.

Further, after the system failed, it was discovered that a french drain system had been installed around the lines and that the french drain system was wrapped in cloth. Larry Walker, a former employee of the Forsyth County Health Department and an expert in sewage disposal systems, testified that the existence of the french drain wrapped in cloth showed that the person who installed the french drain knew of the high water problem at the time the system was installed. Although Gantt testified that there was no ground water where the tank was placed, there was testimony that ground water was found in the lines each of the numerous times that tests of the field lines were subsequently performed.

Various soil tests performed on the property demonstrated that the soil was inappropriate for the system and, according to one expert, the soil was "the kiss of death" for any septic system. This witness also testified that when the septic tank was excavated he saw quantities of vegetation — or "nature's fill" — in the vicinity of the tank. Clearly, there was evidence from which the jury could conclude that Gantt knew that the system was installed in inappropriate soil and that he misrepresented or concealed this fact from the Bennetts.

2. Gantt contends that the trial court erred in denying his motions for directed verdict and new trial on the claims of attorney fees. He argues that there was insufficient evidence of bad faith and

litigiousness to support the award and that there was insufficient evidence regarding the method by which to calculate the amount of the award.

We disagree and conclude that there was evidence from which a jury could impose these fees. In light of the testimony from the attorney at trial and the terms of the written contingency fee agreement,[3] we also find that the evidence regarding the reasonableness and the amount of the fees was sufficient. See generally *Walther v. Multicraft Constr. Co.*, 205 Ga. App. 815, 816 (3) (423 SE2d 725) (1992).

3. Gantt argues that evidence which accidentally went out with the jury warranted a mistrial. The evidence to which Gantt objected were documents regarding witness Allmon's criminal record. Allmon had been called as a witness by defendant Bealle to establish that Bealle had performed certain percolation tests on the Bennetts' lot.

Gantt has not demonstrated that this error harmed him and we find no reversible error. After discovering that the evidence had gone out with the jury, the court conducted a full voir dire of the jurors and established that none of them had considered the exhibits. In response to questioning from the court, all of the jurors responded that they could disregard whatever knowledge they had derived from the exhibits in arriving at the verdict. Moreover, the jury returned a verdict in favor of Bealle on the claims regarding which Allmon had testified. "An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful." (Punctuation omitted.) *City of College Park v. Pichon*, 217 Ga. App. 53, 54 (1) (456 SE2d 686) (1995).

4. We have reviewed Gantt's additional enumerations of error and find them meritless.

### Case No. A97A1999

In Case No. A97A1999, Terry Propes and the Forsyth County Board of Health appeal the jury's verdict against them, raising seven enumerations of error. Again, we affirm.

5. In three separate enumerations, Propes and the Board of Health argue that the court erred in denying their motion for a directed verdict on the fraud count when: there was no evidence from which the jury could find that Propes knowingly made a false statement; there was no evidence regarding the Bennetts' reasonable reliance; and there was no other basis for liability against either Propes or the Board of Health. Contrary to these contentions, there was sufficient evidence of fraud to send the case to the jury.

---

[3] Both the attorney's testimony and the fee agreement established that the Bennetts had agreed to pay a one-third contingency fee, minus $5,000.

Viewing the evidence in the light most favorable to the verdict, Propes, the county inspector, failed to comply with county regulations and failed to complete an on-site inspection of the septic system before it was covered up with dirt. The "On-Site Sewage Management System Handbook," which contained the regulations adopted by Forsyth County, required inspections on all systems. The regulations stated: "[n]o person may cover or use an on-site sewage management system until final inspection is made by the County Board of Health to determine compliance of the provisions of the construction permit issued under [another regulation] and written approval has been issued by the County Board of Health." Despite this requirement, Propes admitted that he issued the permit for the Bennetts' property without performing a visual inspection. He stated that he issued the permit and inspection report based on the contractor's drawing.

Despite the fact that he had not performed the required inspection, Propes signed as "inspector" the inspection report for the permit on the plaintiffs' septic system. Propes circled the word "Approved" next to the indication for the sewage disposal system and also drew a line to a written notation which stated "contractors' drawing." Propes filled in the inspection date and also filled in details regarding the system, including information regarding the system's capacities, the width of the trench, and the length of the field lines. Propes admitted at trial that after the document was issued, Gantt was not required to have any more inspections done on the property regarding the septic system. The evidence showed that in addition to the false inspection report on the Bennetts' home contrary to both the terms of the applicable regulations and the form itself, Propes and other officials completed false reports on a number of other houses in the subdivision.

There was conflicting testimony as to whether approving septic systems based on the contractors' drawings was an approved practice for the Board of Health inspectors. Although Propes and others testified that this procedure was the unofficial policy of the office, there was also testimony from Propes' supervisor that Propes was reprimanded for "falsification of documents" *for the events which underlie this case*. The trial court's denial of the motions was proper; Propes' argument that writing the words "contractors' drawing" on the document alters this result is without merit.

Similarly, Propes' arguments that there was no evidence regarding reasonable reliance are without merit. First, given the evidence of a conspiracy between Gantt and Propes, there was a factual issue regarding reliance. See *R.R.R. Limited Partnership v. Investguard, Ltd.*, 219 Ga. App. 34 (463 SE2d 735) (1995). Moreover, there was evidence that Mrs. Bennett got a letter from Mike Brown of the

Health Department at the closing on the house, which stated that the septic system "was examined and apparently operating properly on 1-25-89." The denial of the motion for directed verdict was proper. Because of the factual issues regarding Propes, the Forsyth County Board of Health was also liable.

6. Propes and the Forsyth County Board of Health contend that the statute of limitation expired prior to the Bennetts adding Propes as a party. The Bennetts claim that the four-year statute of limitation was tolled under OCGA § 9-3-96 until the discovery of the fraud, due to defendants' fraudulent concealment of the defect, and that therefore the statute of limitation did not bar the claim. We agree. See generally *Fleming v. Lee Engineering &c. Co.*, 184 Ga. App. 275, 276 (361 SE2d 258) (1987); compare *Moore v. Meeks*, 225 Ga. App. 287 (2) (483 SE2d 383) (1997).

There was evidence that in February 1990, the Bennetts had their yard excavated and discovered that the pipes were wrapped in cloth. Upon this discovery, they contacted the Health Department and on February 22, 1990, a Health Department environmental technician wrote the Bennetts, enclosing a copy of the falsified permit which Propes had signed. On February 28, 1990, the technician again wrote the Bennetts, stating that — contrary to all previous indications — the sewage system had *not* been inspected by the Health Department. The amendment to the Bennetts' complaint which added Propes as a defendant was filed within four years of the date of the later letter.

"Fraud claims are governed by a four-year statute of limitation, but this limitation period may be tolled if appellant committed an act of actual fraud that had the effect of concealing from the plaintiff the existence of the cause of action despite its exercise of reasonable diligence. Actual fraud involves moral turpitude, and requires an intentional deception by false representation or by concealment of a fact. When actual fraud is the gravamen of the underlying action, no independent fraud is required for tolling of the statute of limitation, and the limitation period is tolled until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the fraud." (Citations and punctuation omitted.) *Ramey v. Leisure, Ltd.*, 205 Ga. App. 128, 129 (1) (421 SE2d 555) (1992). "Thus, when the statute of limitation began to run was an issue for the jury. [Cit.]" (Citations and punctuation omitted.) *Hall v. Richardson Homes*, 168 Ga. App. at 597.

Propes and the Board of Health also claim that the court gave a misleading charge to the jury by misstating the date on which the complaint against Propes was filed. Their argument is without merit for two reasons: first, the arguments misrepresent the mistake the court made; secondly, for the reasons above, any such mistake was

harmless.

7. Propes and the Board of Health argue that the court erred in denying their motion for mistrial after discovering that the jury took out documents which were not evidence. As discussed in Division 3 above, this argument is without merit.

8. Propes and the Board argue that the award of attorney fees was improper. As stated in Division 2, we disagree. See generally *Ross v. Hagler*, 209 Ga. App. 201, 204 (3) (433 SE2d 124) (1993).

### Case No. A97A2000

In Case No. A97A2000, the Bennetts and their attorney appeal on various matters, including the trial court's order assessing sanctions pursuant to OCGA § 9-15-14 regarding their RICO claims against defendant David Bealle. We agree and reverse on this basis; the remainder of the judgment we affirm.

9. Initially, the Bennetts and their attorney contend that the trial court erred in assessing sanctions against them pursuant to OCGA § 9-15-14 after the trial court had previously denied defendant Bealle's motions for summary judgment and directed verdict.

"Pursuant to OCGA § 9-15-14 (b), a trial court may assess attorney fees if it finds (1) that an attorney or party brought or defended an action that lacked substantial justification *or* (2) that the action was interposed for delay or harassment *or* (3) that an attorney or party unnecessarily expanded the proceedings by other improper conduct. An award under OCGA § 9-15-14 (b) is discretionary and the standard of review is abuse of discretion." (Punctuation omitted.) *McKeen v. McKeen*, 224 Ga. App. 410 (1) (481 SE2d 236) (1997).

In the present case, Bealle sought attorney fees and expenses resulting from his defense of the Bennetts' RICO claim against him. In the RICO claim, the Bennetts alleged that Bealle was engaged in a criminally corrupt activity by the falsification of a preliminary survey which was submitted to the Health Department. The trial court denied Bealle's motions for summary judgment and directed verdict on this issue; however, the jury returned a verdict in favor of Bealle on both the Bennetts' RICO and fraud claim. Thereafter, the trial court granted Bealle's motion for sanctions pursuant to OCGA § 9-15-14.

In *Porter v. Felker*, 261 Ga. 421, 422 (405 SE2d 31) (1991), the Supreme Court of Georgia determined that a trial court's failure to grant summary judgment to a party will not, as a matter of law, preclude a later finding that attorney fees are authorized pursuant to additional facts which were not foreseen at the summary judgment stage. Because the trial court also denied Bealle's motion for directed verdict after the close of the evidence, the Bennetts argue that the

*Porter* analysis should apply and preclude the trial court from awarding attorney fees. We agree.

Although *Porter* only dealt with the award of attorney fees after the denial of a motion for summary judgment, the court's analysis applies at least as strongly to the present situation. In *Porter*, the court held that "a trial court's award to a party whose motion for summary judgment was denied must be vacated except in unusual cases where the trial judge could not, at the summary judgment stage, foresee facts authorizing the grant of attorney fees." Id. at 422 (3). In the present case, the trial court heard all of the facts which had been presented to the jury before denying the defendants' motions for directed verdict on the RICO claim. Therefore, this case is not such an "unusual case" that allows the trial court to award attorney fees after denial of the party's motion for directed verdict. See id.; see also *Hamm v. Willis*, 201 Ga. App. 723, 727 (6) (411 SE2d 771) (1991). Accordingly, we must reverse the trial court's award of attorney fees to defendant Bealle.

10. The Bennetts contend that the trial court erred in failing to allow them to introduce an evaluation of Propes which contained the notation "falsification of documentation." However, we find that any error in not allowing the document was harmless in that it would have been cumulative of other testimony. Specifically, Propes' supervisor was allowed to testify that a notation regarding "falsification of documentation" was contained on Propes' evaluation. His supervisor also indicated that the notation referred to the facts surrounding the case at trial. "[A]n appellant must show harm as well as error to prevail on appeal." (Punctuation omitted.) *Great Western Bank v. Davis*, 203 Ga. App. 473, 475 (3) (416 SE2d 899) (1992) (no reversible error where contents of document put into evidence through testimony but document not allowed). We find no harmful error.

11. The Bennetts contend that the trial court erred in allowing the defendants to produce evidence that they had previously dismissed their case against some of the defendants and then later filed this action. The Bennetts argue that our decision in *Turner v. W. E. Pruett Co.*, 202 Ga. App. 287 (2) (414 SE2d 248) (1991), requires reversal of the underlying judgment. In *Turner*, we held that the trial court committed reversible error in allowing defendant's counsel to introduce irrelevant evidence regarding the plaintiff's failure to initiate the lawsuit until just prior to the expiration of the statute of limitation. Id.

However, in the present case, the trial court ruled that evidence of the previous dismissal had some relevance. It ruled that "to the extent that [the Bennetts] may be claiming damages as a result of the time that [they] have suffered at the hands of the Defendants, and that that might be impacted in some way by the dismissal of this

lawsuit, I'm going to let them put it in." In *Nottingham Co. v. Resource Materials Corp.*, 210 Ga. App. 128, 131 (2) (435 SE2d 447) (1993), the trial court determined that evidence that the plaintiff had filed its lawsuit shortly before the expiration of the applicable statute of limitation was relevant to some of the defendant's defenses and allowed it to be introduced. On appeal, we distinguished *Turner* and found no error in the trial court's admission of the testimony. *Nottingham*, 210 Ga. App. at 131. "Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it." (Punctuation omitted.) Id. In the present case, we find no error in the trial court's admission of the testimony.

12. The Bennetts contend that the trial court erred when it released a witness from his subpoena over their objection. The Bennetts attempted to impeach Bealle's witness, Michael Allmon, using documents other than the certified copy of his previous conviction for drug trafficking. The Bennetts did not want the court to release Allmon from his subpoena in order that they could recall him for impeachment when they received the proper proof. Again, as in Divisions 3 and 6 above which also involve the criminal record of this witness, we find no harmful error.

*Judgment affirmed in Case Nos. A97A1998 and A97A1999. Judgment affirmed in part and reversed in part in Case No. A97A2000. McMurray, P. J., Beasley, Johnson and Smith, JJ., concur. Andrews, C. J., and Blackburn, J., dissent.*

BLACKBURN, Judge, dissenting.

The trial court erred in denying defendants' motions for directed verdict, therefore, I dissent from the judgments in Case Nos. A97A1998 and A97A1999 and the analysis contained in Divisions 1, 2, 4, 5, and 8. I concur with the analysis in Divisions 3, 6, 7, and 9-12, and the judgment in Case No. A97A2000.

The Bennetts failed to present evidence that Jake Gantt had actual knowledge that the septic system was defective. "Fraud unlike negligence, breach of warranty or breach of contract, is premised upon the 'actual moral guilt' of the defrauding party. Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of the falsehood constitutes an essential element. The element of intention to deceive is as necessary in an action based on concealment as one based on wilful misrepresentation. An action for fraud and deceit must be based upon a representation or concealment which was made with the intention and purpose of deceiving the opposite party, and for the purpose of injuring him." (Citations and

punctuation omitted.) *Lively v. Garnick*, 160 Ga. App. 591, 592 (287 SE2d 553) (1981).

In Case No. A97A1998, a careful review of the trial transcript did not reveal any evidence from which the jury could infer that Jake Gantt had actual knowledge that the septic system was defective as installed. Although the Bennetts cite to their expert testimony that Jake Gantt "should have known" the system would not work, such evidence is not enough to show actual knowledge, but merely constructive knowledge. "It is clear, however, that in a fraudulent concealment action the allegedly defrauded party must prove that the alleged defrauder had *actual*, not merely constructive, knowledge of the fact concealed. . . . An assertion that one 'should have known' of a defect alleges at most a constructive knowledge." (Punctuation omitted.) Id. at 593-594.

The majority asserts that the fact that a french drain was installed around the septic system showed Gantt's knowledge of a high water problem. However, no evidence was produced at trial indicating that Gantt knew that the installation of a french drain was not a proper way to handle any problem with high ground water. The testimony indicated that french drains were used to lower the water table. Although the majority points to other facts including ground water in the line and expert testimony regarding soil conditions, the plaintiffs failed to present any evidence that Gantt was aware of this information. Furthermore, we have previously held that "it is not a 'reasonable or logical' inference from the mere fact that a builder-seller has constructed a house subsequently discovered to be 'defective' that he *knowingly concealed* those defects and thereby deceived and defrauded the purchaser." Id. at 594.

In the present case, the plaintiffs failed to present any evidence regarding the actual installation of the septic system. Although the evidence indicated that Bobby Gantt installed the Bennetts' septic system, he did not testify at trial. The evidence in this case may have supported a cause of action in negligent construction, however, that is not the issue before us. Absent some evidence of Jake Gantt's " 'moral guilt' in effectuating the sale with actual knowledge of the [septic system's] defects, a recovery and judgment predicated upon [Jake Gantt's] fraud . . . cannot stand." Id. at 594-595. The trial court erred in denying Jake Gantt's motion for directed verdict.

In Case No. A97A1999, Terry Propes and Forsyth County Board of Health contend that the trial court erred in denying their directed verdict on the Bennetts' fraud claim and claim for attorney fees.

The Bennetts contend that Propes and the Board of Health are liable in fraud because Propes, the county inspector, failed to comply with county regulations and did not complete an on-site inspection of the septic system before it was covered up with dirt. County regula-

tions required that "[n]o person may cover or use an on-site sewage management system until final inspection is made by the County Board of Health to determine compliance of the provisions of the construction permit issued under Section 290-5-26.033 and written approval has been issued by the County Board of Health." Propes signed the inspection report for the permit on the plaintiffs' septic system. Propes circled the word "Approved" next to the indication for the sewage disposal system and also drew a line to his written notation "contractor's drawing." Testimony by more than one inspector at trial indicated that around the time this permit was issued, if the inspectors were unable to do an on-site inspection due to time constraints, they would review the contractor's drawing of the septic system and approve or reject the system based on such drawing. Although the evidence was in conflict as to whether this procedure was in fact approved by their supervisors, the evidence was not conflicting as to whether the inspectors themselves believed that the procedure was approved. Each inspector testified that the procedure was the unofficial policy of the office. Furthermore, evidence that the inspectors may have been later reprimanded for such procedures does not negate the inspector's lack of knowledge of the impropriety of their actions at the time they were performed.

"The elements essential to an action in tort for damages resulting from a material misrepresentation constituting fraud are: (1) that the defendant made the representations; (2) that at the time he knew they were false (or what the law regards as the equivalent of knowledge); (3) *that he made them with the intention and purpose of deceiving the plaintiff*; (4) that the plaintiff relied on such representations; (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made." (Punctuation omitted; emphasis supplied.) *Lister v. Scriver*, 216 Ga. App. 741, 745 (456 SE2d 83) (1995). In the present case, the uncontroverted testimony at trial shows that Propes did not intend to mislead anyone when he approved the septic system pursuant to the contractor's drawing. He noted on the face of the form that the approval was on the contractor's drawing. As an intention to mislead is a necessary element of a cause of action in fraud, and the Bennetts failed to introduce any evidence that Propes intended to mislead them, I would find that the trial court erred in denying Propes' motion for directed verdict on the Bennetts' claim of fraud.

The Bennetts' claims against the Board of Health are derivative of their claims against Propes. Therefore, the trial court should have also granted the Board of Health's motion for directed verdict. See cf. *Crow v. Evans*, 183 Ga. App. 581, 582 (359 SE2d 446) (1987) ("respondeat superior prohibits a finding against the master when there has been a judgment on the merits in favor of the servant on whom the

master's liability was predicated"). Based upon such a finding, the trial court also erred in assessing attorney fees against Propes and the Board of Health.

While the evidence presented in this case may support a claim for negligent construction, it does not support the Bennetts' claims for fraud. I would find that the trial court erred in denying the defendants' motions for directed verdict and in granting the Bennetts' claims for attorney fees.

I am authorized to state that Chief Judge Andrews joins in this dissent.

DECIDED FEBRUARY 25, 1998 —
RECONSIDERATION DENIED MARCH 17, 1998

*Richardson & Chenggis, George G. Chenggis,* for Gantt.
*Van Gerpen & Associates, Earl J. Van Gerpen, Terry L. Strawser,* for Propes.
*Dreger & McClelland, Richard J. Dreger,* for Bennett et al.
*Gary P. Bunch,* for Forsyth County Board of Health.