A00A0369, A00A0370. NICHOLS et al. v. MAIN STREET HOMES, INC.; and vice versâ.
(536 SE2d 278)

POPE, Presiding Judge.
Bonnie and Norman Nichols sued Main Street Homes, Inc. for damage resulting from water run-off after Main Street developed a tract upstream from their home. At trial, the Nicholses were awarded $125,000 in compensatory damages and $54,075.32 in attorney fees and litigation costs. But the trial court partially granted Main Street's motion for judgment notwithstanding the verdict, striking the award of attorney fees and costs. The Nicholses appeal that rul-

---

ing. Main Street filed a cross-appeal asserting that the trial court erred in denying its separate motion for new trial on the ground that the jury's compensatory damage award was not supported by the evidence.

The record shows that the Nicholses operated a small organic produce farm on their property and had planned to use water from a stream that traversed the tract to irrigate their plants. Norman Nichols testified that he originally bought the property in 1984 because of the stream. The Nicholses' stream originated from a spring located on property acquired by Main Street in 1993.

Main Street began developing its property into the Ashley Glen subdivision in the spring of 1994. In connection with the development, Main Street clear-cut all or most of the vegetation. They installed streets and roads and constructed storm sewers, which drained into a detention pond directly upstream from the Nicholses' property.

The Nicholses presented evidence that after the construction began, the area around the stream experienced more accelerated erosion and increased water flow. The deepest point of the creek increased from between four and five feet to seven feet. In addition, mud, rock and heavy debris would wash down from the construction site. When it rained, Norman Nichols noticed silt and mud washing off the construction site into the stream and suspended silt in the water.

The Nicholses subsequently contacted both Cobb County and Main Street to see if the problem could be remedied. In response, Main Street put up a check dam and "riprap" on its property to slow down the volume of water, spent less than an hour cleaning out some of the silt on the Nicholses' property after a flood and worked on the detention pond. In addition, the Nicholses petitioned the Cobb County Zoning Board for an eight-foot fence and a twenty-five-foot undisturbed buffer between the properties. These requests were granted.

Nevertheless, the Nicholses continued to experience problems with water quality, especially after a rain. The silt that Main Street had removed washed back into the stream and rock from the check dam also washed down. The Nicholses testified that following the construction they were not able to enjoy their property the way they did before. Nor could they use the water for their organic farming operation because they were concerned about chemicals washing off the subdivision lawns and street. Bonnie Nichols testified that you could sometimes see a film on the water and at times it would have a chemical smell. Despite continued discussions between the parties and their lawyers, the matter was not resolved, and litigation ensued.

## Case No. A00A0369

1. The Nicholses first contend that the trial court erred in refusing to allow their attorney to testify as to the reasonableness of their attorney fees. The trial in this case was bifurcated as to the issue of attorney fees, and in the first phase of the trial, the jury was asked to determine only whether the Nicholses were entitled to attorney fees, but not to determine any amount. During the second phase of the trial, the parties were allowed to present evidence on the attorney fee issue. Norman Nichols testified that he and his wife had entered into a contingency fee arrangement with their attorney, and the fee agreement was placed into evidence. He also testified that he had incurred $4,075.32 in costs in connection with the litigation.

The Nicholses' attorney then indicated that he would testify as to the reasonableness of the fee, but the trial court refused to allow the testimony. The trial court stated that the attorney could not testify because that would make him a fact witness, thus creating a conflict in his representation of the Nicholses. The Nicholses' attorney excepted to the trial court's ruling, and after the close of the case, the trial court allowed him to make a proffer of evidence on the issue.

It is well established that an attorney may testify as to the reasonableness of his own fee. See, e.g., *Evans Toyota v. Cronic*, 233 Ga. App. 318, 321 (2) (a) (503 SE2d 358) (1998); *Ins. Co. of North America v. Allgood Elec. Co.*, 229 Ga. App. 715, 720 (3) (b) (494 SE2d 728) (1997); *U-Haul Co. &c. v. Ford*, 171 Ga. App. 744, 746 (5) (320 SE2d 868) (1984). Thus, it was error for the trial court to refuse the Nicholses' counsel the opportunity to testify. And as discussed in Division 2 (b) below, because the trial court's refusal to allow the testimony prevented the Nicholses from presenting sufficient evidence of their fees, we cannot say the error was harmless.

2. The Nicholses also contend that the trial court erred in granting Main Street's motion for j.n.o.v. as to the award of attorney fees. In reviewing the grant of j.n.o.v., we must view the evidence in the light most favorable to the party who obtained the jury verdict, and the standard of review is whether there is any evidence to support the verdict. *Peters v. Hyatt Legal Svcs.*, 220 Ga. App. 398, 400 (1) (b) (469 SE2d 481) (1996).

(a) The Nicholses sought attorney fees on the ground of bad faith. They argue that evidence showed that Main Street continued the Ashley Glen development with knowledge that it was damaging their property, and that this evidence was sufficient to submit the issue of attorney fees to the jury.

Bad faith warranting attorney fees must arise out of the transaction on which the plaintiff's claims are based. "It may be found in how defendant acted in his dealing with plaintiff." (Citation and

punctuation omitted.) *CSX Transp. v. West*, 240 Ga. App. 209, 211-212 (3) (a) (523 SE2d 63) (1999). In *CSX Transp. v. West*, we affirmed the trial court's denial of j.n.o.v. on an award of attorney fees in a water run-off case. There we found that bad faith existed where the defendant failed to maintain drainage control despite its knowledge that the plaintiff's property flooded as a result. Id. And in a recent case also involving claims arising from excessive storm water and sediment discharge, the Supreme Court of Georgia noted that "every intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees." (Citations and punctuation omitted.) *Tyler v. Lincoln*, 272 Ga. 118, 122 (2) (527 SE2d 180) (2000).

Here, there was evidence to suggest that although Main Street took some steps to alleviate the run-off problem, it knew such steps were not working and, nevertheless, proceeded with its development of the property. We find this evidence was sufficient to submit the issue of attorney fees to the jury.

(b) But the evidence submitted to the jury as to the reasonableness of the fees was insufficient to sustain the jury's award. The only evidence the Nicholses presented was the fee agreement and Norman Nichols' testimony regarding the expenses of litigation. In order to recover for professional services, an attorney must prove the value of those services. *Hsu's Enterprises v. Hospitality Intl.*, 233 Ga. App. 309, 311 (2) (502 SE2d 776) (1998). And "[e]vidence of the existence of a contingent fee contract, without more, is not sufficient to support [an] award of attorney fees. [Cit.]" Id. Nor was Norman Nichols' testimony sufficient to sustain the award. See *City of College Park v. Pinchon*, 217 Ga. App. 53, 56 (4) (456 SE2d 686) (1995).

Instead, evidence of the reasonableness of the fee arrangement is required, including evidence of "hours, rates or other indication of the value of the professional services." *Hsu's Enterprises v. Hospitality Intl.*, 233 Ga. App. at 311 (2). Compare *Walther v. Multicraft Constr. Co.*, 205 Ga. App. 815, 817 (3) (423 SE2d 725) (1992). But here the trial court prevented the Nicholses' attorney from presenting evidence as to the reasonableness of the fees. Under these circumstances, the trial court's grant of j.n.o.v. must be reversed and the matter remanded for a new trial on the limited issue of the amount of attorney fees.

### Case No. A00A0370

3. In its cross-appeal, Main Street argues that the evidence at trial was insufficient to support the jury's compensatory damage award in the amount of $125,000. It notes that the only evidence of monetary damages came from Nelson Nunnally, a consultant on ero-

sion and sediment control, who testified that it would take $27,000 to $28,000 to rebuild the stream to its original dimensions. But the Nicholses were not limited to recovery of those damages:

> In a continuing, abatable nuisance case, the plaintiff is not limited to a recovery of rental value or market value; rather, he may recover any special damages whether the injury is of a temporary or a permanent nature. Unlawful interference with the right of the owner to enjoy possession of his property may be an element of damages. The measure of damages for "discomfort, loss of peace of mind, unhappiness and annoyance" of the plaintiff caused by the maintenance of a nuisance is for the enlightened conscience of the jury.

(Citations omitted.) *City of Columbus v. Myszka*, 246 Ga. 571, 573 (6) (272 SE2d 302) (1980). See also *Arvida/JMB Partners v. Hadaway*, 227 Ga. App. 335, 339-340 (2) (489 SE2d 125) (1997).

In addition to Nunnally's testimony, the Nicholses presented evidence concerning their loss of enjoyment of the property and their inability to use the water from the stream for their organic produce operation. Moreover, the jury viewed pictures of the property before and after construction and viewed the site in person. This evidence gave the jury the opportunity to form an opinion as to the damages: "The jury, having viewed the premises by consent of the parties, were in a better position to form an opinion as to the damages alleged than is this court from the reported evidence alone." (Citations and punctuation omitted.) *Southern Mut. Investment Corp. v. Langston*, 128 Ga. App. 671, 674 (5) (197 SE2d 775) (1973). See also *Oglethorpe Realty Co. v. Hazzard*, 172 Ga. App. 98, 99 (1) (321 SE2d 820) (1984). "The verdict of the jury, therefore, was not without evidence to support it," and the trial court correctly denied Main Street's motion for new trial. *Southern Mut. Investment Corp. v. Langston*, 128 Ga. App. at 674 (5).

*Judgment affirmed in Case No. A00A0370. Judgment reversed in Case No. A00A0369 and case remanded. Smith, P. J., and Miller, J., concur.*

DECIDED JUNE 23, 2000.

*Jenkins & Burns, Brian M. Dubuc*, for appellants.
*Misner, Scott & Grate, Steven J. Misner*, for appellee.